UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| STERLING COMPUTERS CORPORATION,<br><br>            Plaintiff,<br><br>    vs.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION,<br><br>            Defendant. | 4:23-CV-04150-CCT<br><br><br>**ORDER DENYING PLAINTIFF'S MOTION TO DISMISS** |

Sterling Computers Corporation moves pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(f) to dismiss all counterclaims brought by International Business Machines Corporation (IBM). Docket 29. IBM opposes the motion. Docket 32.

**BACKGROUND**

On September 28, 2023, Sterling Computers brought an action against IBM alleging trademark infringement and unfair competition under the Lanham Act and common law and trademark infringement and deceptive trade practices under South Dakota law. Docket 1 at 11–14.[1] Sterling Computers also sought a declaratory judgment. *Id.* at 14–15.

In its complaint, Sterling Computers related that it "was founded in 1996 and is an award-winning leader in the provision of information technology and

---

[1] Page numbers, rather than paragraph numbers, are used throughout.

computer services, including the resale of both software and hardware, to both public sector and private companies." *Id.* at 2. Sterling Computers also described itself as "a value-added technology reseller, solution and service provider, and trusted advisor for government, commercial, and educational sectors." *Id.*

According to Sterling Computers, it uses certain marks in its service offerings and in advertising, promoting, and marketing its services. *Id.* Relevant to this lawsuit, Sterling Computers asserted it "has continuously used the term STERLING [ ] in commerce at common law as a service mark in connection with information technology services since at least as early as April 30, 2011." *Id.* Sterling Computers further asserted that it has continuously used a specific design mark it labeled as "the STERLING & Design mark" as a service mark in commerce at common law "in connection with the Sterling Services since at least as early as April 30, 2011." *Id.* at 4. Finally, Sterling Computers claimed that it "has continuously used the name STERLING COMPUTERS [ ] in commerce at common law as a service mark in connection with information technology and computer products and services since at least as early as 1996." *Id.* at 5. The above marks will be collectively referred to as the "Sterling Marks."

Sterling Computers argued that it has spent considerable time, effort, and money in advertising, promoting, and marketing its services under the Sterling Marks over many years and that these marks have "come to be recognized by consumers as an indication of the source and quality of

2

Sterling's information technology services." *Id.* at 3, 4, 6. It also claimed that its "advertising and substantial sales of the Sterling Services under" the Sterling Marks has "resulted in extensive valuable goodwill and widespread recognition of" these marks and of Sterling Computers' "services throughout this District and the United States." *Id.* at 4, 6. Sterling Computers noted that it "has applied for registration of the standard character mark STERLING," *id.* at 4, and "is the owner of an application for registration for the STERLING & Design mark [ ] with the United States Patent and Trademark Office," *id.* at 5 (bold omitted).

IBM has also been using marks that incorporate the name "Sterling." *Id.* at 6–7. According to Sterling Computers, those marks include: STERLING; IBM STERLING; STERLING COMMERCE; STERLING COMMERCE & Design; STERLING INTEGRATOR; and STERLING INFORMATION BROKER. *Id.* at 7–11. However, Sterling Computers clarified in its complaint that it challenges only IBM's use of the IBM STERLING and STERLING marks because it believes IBM's other Sterling marks are "recognizably distinct" from Sterling Computers' Sterling Marks and further that IBM's other Sterling marks are used in connection with services different from Sterling Computers' services and different from IBM's services using the IBM STERLING and STERLING marks. *Id.* Sterling Computers labeled IBM's other, nonchallenged Sterling Marks as "Unaccused IBM Marks." Docket 30 at 4.

For the challenged IBM STERLING and STERLING marks, Sterling Computers claimed that IBM did not begin to use these marks "in connection

with services and products that compete with, or are related to, Sterling's services and products until at least 2020" and that it did so without Sterling Computers' consent. Docket 1 at 6, 7. According to Sterling Computers, "[t]he names IBM STERLING and STERLING, as used by IBM in connection with its information and technology and computer products and services, are confusingly similar to" Sterling Computers' use of its Sterling Marks. *Id.* at 7. And it claimed that IBM's use of these marks "in connection with its products and services is likely to cause confusion, mistake, or deception." *Id.*

Sterling Computers argued that "IBM's use of the IBM STERLING and STERLING marks is causing irreparable harm to Sterling's business and goodwill and will continue to cause such irreparable harm if not enjoined." *Id.* at 12. Sterling Computers also alleged that IBM's conduct has caused it damages and that IBM has been unjustly enriched "by virtue of its deception of consumers and misappropriation of Sterling's goodwill." *Id.* at 13–14. Sterling Computers requested, among other things, damages for IBM's conduct, an injunction enjoining IBM from using the IBM STERLING and STERLING marks, and a declaratory judgment related to the disputed trademark rights.[2] *Id.* at 14–16.

---

[2] Sterling Computers noted that IBM "sought to register marks," namely the IBM STERLING and STERLING marks, "for use in connection with information technology and computer products and services" and identified an October 1, 2019 priority date on its applications. Docket 1 at 7. As part of its request for relief, Sterling Computers sought a declaratory judgment canceling IBM's applications for registration of the IBM STERLING and STERLING marks and a declaratory judgment holding that the registration obtained by IBM for the IBM STERLING mark is invalid and unenforceable. *Id.* at 15.

4

IBM filed an answer on November 30, 2023, and asserted multiple affirmative defenses. Docket 18. Relevant to Sterling Computers' motion to dismiss, IBM alleged in its second affirmative defense that Sterling Computers' "claims fail, in whole or in part, because there is no likelihood of confusion, mistake, or deception between IBM's use of its STERLING and IBM STERLING marks, on the one hand, and [Sterling Computers'] alleged STERLING, STERLING & Design, and STERLING COMPUTERS marks, on the other hand." *Id.* at 13. Also relevant to Sterling Computers' motion to dismiss, IBM alleged in its third affirmative defense that Sterling Computers' "claims are barred, in whole or in part, by IBM's priority of rights." *Id.*

IBM also brought seven counterclaims against Sterling Computers premised on the view that IBM's use of what it regards as the "STERLING-formative marks" predates Sterling Computers' use of its Sterling Marks by 20 years. *Id.* at 15. In support of its counterclaims, IBM related the history leading up to its use of the STERLING-formative marks, noting that the name "STERLING" as a mark was first used by Sterling Software, Inc.—a company that "was founded in 1981 in Dallas, Texas by Sam Wyly; Charles Wyly, Jr.; Sterling Williams; and Philip Moore as an information technology and computer software company." *Id.* at 16. IBM also related that this company, Sterling Software, registered its Sterling Software mark in 1987 "in connection with 'consulting and engineering design services for computer systems and software'" and, in 1989, registered the domain name <sterling.com>. *Id.* at 16–17. According to IBM, Sterling Software continued to grow into the 1990s and,

by 1993, "was among the top three largest mainframe systems software providers in the country." *Id.* at 17. IBM alleged that "[i]n the fall of 1994, Sterling Software re-organized its business into multiple business groups[,]" including the Electronic Commerce Group that provided "software and services to facilitate electronic commerce, defined by Sterling as the worldwide electronic interchange of business information." *Id.* In 1995, Sterling Software incorporated this business group as Sterling Commerce, Inc., and according to IBM, "all goods and services offered as part of this [group's] business were marketed under at least one STERLING-formative mark." *Id.* at 18.

IBM further alleged that "[i]n 1995 and 1996, Sterling Commerce's worldwide market presence in the information technology and computer goods and services industry was supreme." *Id.* According to IBM, in 1996, "Sterling Software completed an initial public offering of Sterling Commerce and completed a spin-off of the entity in September of that year." *Id.* Then, "[i]n 2000, Sterling Commerce was acquired by SBC Communications, Inc., which later merged with AT&T Inc in 2005." *Id.* at 19. IBM claimed that "[t]hroughout this time, Sterling Commerce continued to grow and expand its products and services, remaining a headliner in the software industry" and that it used the STERLING mark in connection with many of its new offerings. *Id.* IBM particularly noted Sterling Commerce's launch of STERLING INFORMATION BROKER in July 2001 and STERLING INTEGRATOR in October 2001. *Id.*

IBM related that it acquired Sterling Commerce in August 2010, when "Sterling Commerce was worth more than $1.4 billion[,]" and that its

acquisition included "the rights in the IBM STERLING Marks associated therewith." *Id.* at 20. IBM claimed that after it acquired Sterling Commerce, it "continued to market information technology and computer products and services under the STERLING mark, including the STERLING COMMERCE mark." *Id.* IBM further asserted that it offered a suite of business integration products and solutions and a suite of sales and fulfillment products and solutions using the STERLING mark. *Id.* at 20–21. It noted that its use of the STERLING-formative marks, as well as its predecessors' use, resulted in various trademark registrations. *Id.* at 25–32. And it claimed that "the IBM STERLING Marks are extremely valuable to IBM and its business." *Id.* at 32.

In addition to relating the above history, IBM described the "long-standing business partnership" between IBM and the plaintiff, Sterling Computers. *Id.* at 32 (bold omitted). IBM claimed that Sterling Computers has since 2001 been a reseller of IBM products, *id.* at 33, and has "promoted IBM as a brand partner on its homepage as early as 2001[,]" *id.* 32. IBM also claimed that in April 2009, Sterling Computers "executed IBM's PartnerWorld Agreement, which memorialized the parties' business partnership." *Id.* at 33. This partnership, IBM alleged, made Sterling Computers eligible to resell IBM products, including "products marketed under the IBM STERLING Marks." *Id.* IBM further asserted that Sterling Computers was notified in 2010 of IBM's acquisition of Sterling Commerce and that Sterling Computers knew since at least 2010 of IBM's use of the IBM STERLING and STERLING marks. *Id.* at 34.

Relying on these allegations and others, IBM requested, in its first counterclaim, a declaratory judgment "that IBM has prior rights to use STERLING-formative marks in connection with information technology and computer products and services as compared to [Sterling Computers]." *Id.* at 43. IBM's remaining counterclaims, which it brought in the alternative to its second affirmative defense, alleged that "[i]f a likelihood of confusion is found," Sterling Computers is liable for trademark infringement under the Lanham Act and common law, for false designation of origin under the Lanham Act, for trademark infringement and deceptive trade practices under South Dakota law, and for unfair competition under common law. *Id.* at 43–47.

On January 22, 2024, Sterling Computers filed this motion to dismiss and motion to strike IBM's counterclaims. Docket 29. It seeks to strike IBM's first counterclaim pursuant to Federal Rule of Civil Procedure 12(f) as redundant, contending that IBM's request for a declaratory judgment "merely restates, and is wholly duplicative of, IBM's Third Defense (Priority), which asserts that Sterling's claims regarding IBM's use of IBM STERLING and STERLING in connection with information technology and computer products and services 'are barred, in whole or in part, by IBM's priority of rights.'" Docket 30 at 19 (quoting Docket 18 at 13). In Sterling Computers' view, IBM's first counterclaim "will necessarily be addressed in the adjudication of Sterling's affirmative claims[,]" and litigating IBM's counterclaim seeking "a declaratory judgment would serve no useful purpose." *Id.* at 20.

8

As it pertains to IBM's remaining counterclaims, Sterling Computers argues that dismissal under Federal Rule of Civil Procedure 12(b)(6) is warranted because IBM, by not making an affirmative allegation of a likelihood of confusion—a necessary element of counterclaims two through seven—has failed to state a claim upon which relief may be granted. Docket 30. Sterling Computers directs this Court to IBM's conditional language in counterclaims two through seven, namely:

Counterclaim II
Trademark Infringement under the Lanham Act

- *To the extent that a likelihood of confusion, deception, or mistake is found* between IBM's use of the Registered Sterling Marks, on the one hand, and SCC's use of the SCC Marks, on the other hand, it would be because consumers who encounter SCC's goods and services are likely to think that they are provided by, sponsored by, associated with, or otherwise affiliated with IBM.

- SCC knows that, *if a likelihood of confusion is found*, it is SCC's use of the SCC Marks that would be infringing, giving it a reason to know the use is infringing, and/or has been recklessly indifferent to the fact that the use is infringing.

- *If a likelihood of confusion is found*, it is SCC's acts that would have caused or are likely to cause IBM and the public to suffer irreparable damage and injury. IBM has no adequate remedy at law.

Counterclaim III
False Designation of Origin under the Lanham Act

- *To the extent that IBM's use of the IBM STERLING Marks,* which have been promoted, distributed, and used in commerce, *are [sic] found to be confusingly similar to the SCC Marks*, then SCC's use of the SCC Marks implies to consumers that its services come from the same source as IBM's goods and services. Such implications are false, confusing to consumers, and material to consumers' purchasing decisions.

9

- *If IBM's use of the IBM STERLING Marks are [sic] found to be confusingly similar to the SCC Marks*, then SCC's unauthorized use of the SCC Marks in connection with the promotion or sale of its services falsely suggests that these services are connected with, sponsored by, affiliated with, or related to, IBM.

- *If IBM's use of the IBM STERLING Marks are [sic] found to be confusingly similar to the SCC Marks*, then SCC's unauthorized use of the SCC Marks constitutes a false designation of origin in violation of 15 U.S.C. § 1125(a).

- *If IBM's use of the IBM STERLING Marks are [sic] found to be confusingly similar to the SCC Marks*, then SCC's conduct has damaged IBM and, unless enjoined by the Court, will further impair the value of the IBM STERLING Marks' name, reputation, and goodwill. This harm constitutes an injury for which IBM has no adequate remedy at law.

Counterclaim IV
Trademark Infringement under SDCL chapter 37-6

- *If a likelihood of confusion is found*, SCC's conduct, as set forth above, constitutes trademark infringement under SDCL Chapter 37-6 *et seq.*

- SCC knows that, *if a likelihood of confusion is found*, it is SCC's use of the SCC Marks that would be infringing, giving it a reason to know that its use of the SCC Marks is intended to be used to cause confusion or mistake or to deceive.

- *If a likelihood of confusion is found*, it is SCC's acts that would have caused or are likely to cause IBM and the public to suffer irreparable damage and injury. IBM has no adequate remedy at law.

Counterclaim V
Deceptive Trade Practices under SDCL chapter 37-24

- *If a likelihood of confusion is found*, SCC's conduct, as set forth above, constitutes deceptive trade practices under SDCL Chapter 37-24 et seq., including 37-24-6.

- SCC knows that, *if a likelihood of confusion is found*, SCC's conduct was knowing and intentional.

- *If a likelihood of confusion is found*, IBM has suffered, and will continue to suffer, actual damages, including in the form of a lost profits.

- *If a likelihood of confusion is found*, SCC's acts have also caused IBM to suffer irreparable damage and injury by causing a loss of IBM's valuable goodwill and business reputation in the IBM STERLING Marks, for which IBM has no adequate remedy at law.

Counterclaim VI
Common Law Trademark Infringement

- *If a likelihood of confusion is found*, SCC's conduct, as set forth above, constitutes trademark infringement under South Dakota common law.

- *If a likelihood of confusion is found*, it is SCC's acts that would have caused or are likely to cause IBM and the public to suffer irreparable damage and injury. IBM has no adequate remedy at law.

Counterclaim VII
Common Law Unfair Competition

- *If a likelihood of confusion is found*, SCC's conduct, as set forth above, constitutes unfair competition under South Dakota common law.

- *If a likelihood of confusion is found*, SCC's conduct has damaged IBM and, unless enjoined by the Court, will further impair the value of IBM's IBM STERLING Marks, reputation, and goodwill. This harm constitutes an injury for which IBM has no adequate remedy at law.

Docket 30; *see also* Docket 18 at 42–47 (emphasis added).

Sterling Computers acknowledges that pleading in the alternative is permitted under Federal Rule of Civil Procedure 8(d)(2). *Id.* at 15. However, it argues that to survive a motion to dismiss pursuant to Rule 12(b)(6), IBM was required to plead sufficient facts to support a reasonable inference that

consumers are likely to be confused by Sterling Computers' use of its Sterling Marks. Docket 30 at 15–16; Docket 33 at 2–6.

IBM disagrees that dismissal of its counterclaims is warranted in any respect.[3] Docket 32. In this regard, IBM does not view its first counterclaim as duplicative of its third affirmative defense. *Id.* at 7. Rather, IBM contends that because Sterling Computers' affirmative claims relate to a narrow set of marks, and IBM's request for a declaratory judgment concerns all of its STERLING-formative marks, "resolution of [its] counterclaim will serve the useful purpose of clarifying for the parties that IBM is the senior user of STERLING-formative marks." *Id.* at 2; *see also id.* at 10–12. IBM further argues that the motion to strike should be denied because "if, for example, this Court finds that [Sterling Computers] is unable to establish the likelihood-of-confusion element of its claims[,]" IBM's priority to use to the STERLING marks challenged by Sterling Computers might not be reached. *Id.* at 2.

On its remaining counterclaims, which are brought in the alternative to its second affirmative defense, IBM contends that Sterling Computers' argument "is inconsistent with the Federal Rules, which expressly allow for alternative pleadings." *Id.* at 3. In its view, it properly pled these counterclaims contingent on the outcome of Sterling Computers' infringement claims. *Id.* at 2, 13. It also argues that despite not affirmatively alleging that a likelihood of confusion exists, its counterclaims "contain allegations concerning

---

[3] IBM alternatively requests that if dismissal is granted against any of IBM's counterclaims, the Court order it to be without prejudice to allow IBM to amend its counterclaims to address any deficiencies found therein. Docket 32 at 3 n.1, 16–17.

confusion[,]" *id.* at 14, and further that it pled sufficient facts on the "likelihood-of-confusion factors" to survive a motion to dismiss, *id.* at 15.

## DISCUSSION

### *Motion to Strike under Rule 12(f)*

"The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The court's authority to strike "enjoys 'liberal discretion'"; however, "striking a party's pleading is an extreme measure, and, as a result, [the Eighth Circuit has] previously held that '[m]otions to strike under Fed. R. Civ. P. 12(f) are viewed with disfavor and are infrequently granted.'" *Stanbury Law Firm v. Internal Revenue Servs.*, 221 F.3d 1059, 1063 (8th Cir. 2000) (citations omitted). "Thus, motions to strike 'should be denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action.'" *Walsh v. Dept. of Navy*, 4:23-CV-04164-ECS, 2024 WL 4043657, at *2 (D.S.D. Sept. 4, 2024) (quoting *Poulos v. Summit Hotel Props.*, LLC, No. CIV 09-4062-RAL, 2010 WL 2034634, at *3 (D.S.D. May 21, 2010)); *see also Hobbs v. Emps. Mut. Cas. Co.*, 5:17-CV-05040-JLV, 2018 WL 1221166, at *2 (D.S.D. March 8, 2018).

Sterling Computers relies on the redundancy ground in Rule 12(f) as a basis to strike IBM's counterclaim seeking a declaratory judgment. Sterling Computers focuses particularly on its view that because this counterclaim is redundant, resolution of it would serve no useful purpose. But Sterling

13

Computers does not identify how allowing IBM's first counterclaim to remain will cause it "some form of significant prejudice[.]" *See Walsh*, 2024 WL 4043657, at * 2; *see also Bjornson v. Soo Line R.R. Co.*, Civil No. 14-4596 (JRT/SER), 2015 WL 5009349, at *9 (D. Minn. Aug. 24, 2015) ("Where material in the pleadings is objected to as redundant, courts often decline to strike the redundancy in the absence of prejudice to the moving party." (citations omitted)); *Stark v. City of Omaha*, 4:23-CV-3242, 2024 WL 3398926, at *7 (D. Neb. July 11, 2024) ("A motion to strike will usually be denied unless the allegations have no possible relation to the controversy and may prejudice one of the parties." (citation omitted)); *Sierra Club v. Tri-State Generation and Transmission Ass'n, Inc.*, 173 F.R.D. 275, 285 (D. Col. 1997) ("Even where the challenged allegations fall within the categories set forth in the rule, a party must usually make a showing of prejudice before the court will grant a motion to strike." (citation omitted)).

Setting aside Sterling Computers' failure to allege some form of significant prejudice, Sterling Computers has not shown that IBM's first counterclaim is redundant to or duplicative of IBM's third affirmative defense. IBM's third affirmative defense alleges that Sterling Computers' claims—which challenge IBM's right to use the IBM STERLING and STERLING marks—are barred, in whole or in part, by IBM's priority rights to those same marks. Docket 18 at 13. In contrast, IBM's first counterclaim seeks a declaratory judgment on IBM's priority to use a broader number of marks labeled by IBM as "STERLING-formative" marks. *Id.* at 42–43. Thus, resolution of Sterling

14

Computers' claims or IBM's third affirmative defense does not perforce resolve all questions raised by IBM's first counterclaim.[4] *See, e.g., Gratke v. Andersen Windows, Inc.*, Civil No. 10-CV-963 (PJS/LIB), 2010 WL 5439763, at *3 (D. Minn. December 8, 2010) (When considering whether to strike a declaratory judgment counterclaim as redundant, a court may consider "whether resolution of the plaintiff's claim, along with the affirmative defenses asserted by the defendants, would resolve all questions raised by the counterclaim."). The Court denies Sterling Computers' motion to strike IBM's first counterclaim seeking a declaratory judgment.

### *Motion to Dismiss under Rule 12(b)(6)*

A motion to dismiss a *counterclaim* under Rule 12(b)(6) implicates the same standards applied to a motion to dismiss a *complaint* under Rule 12(b)(6).

---

[4] In its reply brief, Sterling Computers argues for the first time that "to the extent IBM's declaratory judgment counterclaim relates to IBM's prior rights to use **other** IBM STERLING marks, Counterclaim I seeks an advisory opinion and should be dismissed for lack of subject matter jurisdiction." Docket 33 at 11–12. Sterling Computers notes that the Article III case and controversy requirement applies with equal force to a request for a declaratory judgment. *Id.* at 12. It then argues that no actual case or controversy exists regarding infringement of IBM's *other* IBM STERLING marks because Sterling Computers "has given no indication that it intends to accuse any other IBM marks of trademark infringement." *Id.* at 14. "This court and the Eighth Circuit typically decline to address arguments raised for the first time in a reply brief." *Auto Owners Ins. v. Jones Manf. Co.*, 4:19-CV-04134-KES, 2022 WL 5247147, at *5 n.2 (D.S.D. July 26, 2022) (citing *Lauing v. Rapid City, Pierre & E. R.R., Inc.*, 3:19-CV-03006-RAL, 2022 WL 2542063, at *4 (D.S.D. July 8, 2022); *Liscomb v. Boyce*, 954 F.3d 1151, 1154 (8th Cir. 2020)). This general ruling is particularly sound when the opposing party did not have an opportunity to respond. *See Bird v. Mertens-Jones*, 4:21-CV-04917-KES, 2023 WL 1785572, at *6 (D.S.D. February 6, 2023); *Aga v. Meade Cnty.*, CIV. 21-5059-JLV, 2022 WL 3716000, at *8 (D.S.D. August 29, 2022). Because Sterling Computers raised this argument for the first time in its reply brief and IBM has not had an opportunity to respond, the Court does not consider it. *See Auto Owners*, 2022 WL 524717, at *5 n.2 (declining to consider an argument on the basis that it was raised for the first time in a reply brief).

*Am. Dist. & Manf. Co. LLC v. NP Acquisition, LLC*, No. 23-cv-3250 (SRN/DTS), 2024 WL 2748350, at *1 (D. Minn. May 29, 2024) (citing *Reis v. Walker*, 491 F.3d 868, 870 (8th Cir. 2007)). Therefore, to survive a motion to dismiss, IBM was required to plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). "Stating an adequate claim for relief requires more than 'a formulaic recitation of the elements of a cause of action.'" *Delker v. MasterCard Int'l, Inc.*, 21 F.4th 1019, 1024 (8th Cir. 2022) (quoting *Twombly*, 550 U.S. at 555). The counterclaim "'must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory.'" *Id.* (quoting *Twombly*, 550 U.S. at 562).

As Sterling Computers notes, a likelihood of confusion is a required element for each of IBM's counterclaims two through seven. *See Flamagas, S.A. v. Shenzhen Yocan Tech. Ltd.*, 4:22-CV-4035-LLP, 2023 WL 246878, at *1 (D.S.D. January 18, 2023) (quoting *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 781 (1992) (Stevens, J., concurring) ("Whether we call the violation infringement, unfair competition, or false designation of origin, the test is identical—is there a likelihood of confusion?")). Because this is a required element, Sterling Computers argues that IBM's use of conditional language related to this element necessarily means IBM has failed to adequately plead all elements attendant to these counterclaims. Docket 30 at 15–16; Docket 33 at 5. Sterling Computers then likens IBM's contingent allegations in

16

counterclaims two through seven to that deemed insufficient and dismissed in *Conopco Inc. v. Wells Enterps., Inc.*, No. 14 Civ. 2223 (NRB), 2015 WL 2330115 (S.D.N.Y. May 14, 2015). Docket 30 at 16; Docket 33 at 4–5.

In *Conopco*, the plaintiff, Unilever, brought suit against the defendant, Wells, asserting trademark infringement and other state and federal claims based on its view that Wells' packaging of its "Bomb Pop" is confusingly similar to the Unilever's "trade dress for [its] 'Firecracker' products." 2015 WL 2330115, at *1. Wells counterclaimed for false advertising, trademark infringement, and related state law claims. *Id.* The district court described Wells' contingent assertion in its trademark infringement counterclaim as: *"if a likelihood of confusion does exist between the products,* it does so as a 'result of Unilever's infringement of Wells' trademarked Bomb Pop design"; and "[i]n other words, *if consumers are likely to believe* that Wells' Bomb Pop product comes from the same source as Unilever's Firecracker—which they are not— this belief would be caused by Unilever's adoption of a product configuration for its Firecracker product that is nearly identical to Wells' trademarked Bomb Pop design.'" *Id.* (emphasis added).

Like Sterling Computers here, Unilever moved to dismiss the counterclaim under Rule 12(b)(6), arguing that Wells failed to adequately plead a likelihood of confusion by pleading only a conditional claim and "deliberately refrain[ing] from affirmatively alleging any likelihood of confusion." *Id.* at *7. The district court recognized that Wells was free to bring its counterclaim using conditional or contingent language. *Id.* However, in the district court's view, to

17

satisfy the requirements of Rule 8, Wells was required to make "an affirmative allegation of consumer confusion[.]" *Id.* at *8. The lack of such allegation rendered the counterclaim defective, the court held, and required "dismissal of the counterclaim as pled." *Id.* However, the court explained that "this defect can be easily cured" because "Wells can allege consumer confusion while retaining the contingent posture of the counterclaim by simply denoting that any allegations of consumer confusion are limited solely to this particular counterclaim." *Id.* Ultimately, the court dismissed Wells' counterclaim without prejudice and granted Wells leave to amend its counterclaim. *Id.*

While IBM's counterclaims two through seven are pled contingently like the trademark infringement counterclaim in *Conopco*, the *Conopco* decision is not controlling in this district. *See Jumping Eagle v. Warren*, CIV 18-4131, 2021 WL 462644, at *9 (D.S.D. Feb. 9, 2021) ("This Court is not bound to apply the law of another circuit."). More importantly, however, the district court's reasoning for dismissing Wells' contingent counterclaim is not compelling.

First, the district court did not cite authority for the proposition that Wells' contingent counterclaim was defective under Rule 8 when hypothetical pleading is expressly permitted under Rule 8(d)(2). In fact, the court cited two cases supporting that Wells was free to assert its counterclaim contingent on the outcome of Unilever's claim. *See* 2015 WL 2330115, at *7 (citing *Macia v. Microsoft Corp.*, 335 F.Supp.2d 507 (D. Vt. 2004); *Barr v. Dramatists Guilt, Inc.*, 573 F. Supp. 555 (S.D.N.Y. 1983)). In *Macia*, the district court dismissed a contingent counterclaim as moot *after* a finding of no likelihood of confusion to

18

support the plaintiff's claim, not before like Sterling Computers is seeking here. *See* 335 F. Supp.2d at 522. And in *Barr*, the district court held, after noting that "the defendants have denied that they engaged in any illegal conduct under the antitrust laws, but have alleged hypothetically that if they engaged in any illegal conduct then similar conduct of the counterclaim defendants is unlawful as well," that "[t]he counterclaim is properly framed as a hypothetical pleading." 573 F. Supp. at 560.

Second, the district court's view in *Conopco* that the alleged defect could be cured by pleading an affirmative allegation of a likelihood of consumer confusion expressly limited to the particular counterclaim misses the forest through the trees. "The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchain v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). Combine that function with the ability to plead hypothetically, the amended counterclaim, as suggested by the district court, would not provide Unilever with different or better notice of the nature and basis or grounds for Wells' counterclaim than Unilever already had via Wells' if-then counterclaim. In fact, Wells' counterclaim, as originally pled, put Unilever on notice that Wells does not intend to assert that a likelihood of confusion exists unless it is necessary to prosecute the counterclaim and, further, that if such likelihood of

confusion is found to exist on Unilever's claims, then Wells intends to prove that it was from Unilever's use of the disputed marks, not Wells' use.

Sterling Computers directs this Court to cases other than *Conopco* purporting to support dismissal here. But those case are neither on point nor from this district. Rather, a review of the cases relied on by IBM, along with this Court's independent research, reveals that district courts, including those in this circuit, have declined to dismiss contingent counterclaims structured, as IBM's are here, to reflect a defendant's decision not to admit to a fact (e.g., that a likelihood of confusion exists) that might lead to liability the defendant does not believe it has.[5] *See, e.g., Charles Rubenstein, Inc. v. Columbia Pictures Corp.*, 14 F.R.D. 401, 403 (D. Minn. 1953) (allowing a pleading that denies the existence of a conspiracy as a defense while also asserting an if-then allegation related to the existence of a conspiracy in a counterclaim); *Barr*, 573 F. Supp. at 560 (upholding pleading wherein defendant denied engaging in illegal conduct under the antitrust laws, while alleging hypothetically in a counterclaim that if they so engaged, then similar conduct of the other party is likewise unlawful). *See also In re Sunrise Securities Litigation*, 793 F. Supp. 1306, 1312 (E.D. Pa. 1992) (upholding pleading alleging fraud as a hypothetical if-then allegation).

---

[5] In *Noasha LLC v. Nordic Group of Co., Ltd.*, the defendants alleged a likelihood of confusion in their counterclaims, and the plaintiff asserted that such allegation constituted an admission to the existence of a likelihood of confusion. 630 F.Supp.2d 544, 550 (E.D. Pa. 2009). The district court "reasonably inferred" the allegation of a likelihood of confusion in the counterclaims "to be alternative pleadings[,]" not binding judicial admissions. *Id.* at 551.

Here, IBM's contingent counterclaims two through seven are clearly stated, and the allegations contained therein sufficiently place Sterling Computers on notice of the nature of IBM's counterclaims. Further, although IBM did not make an *affirmative* allegation of consumer confusion, IBM's counterclaims adequately state claims upon which relief may be granted. *See Ashcroft*, 556 U.S. at 678; *Delker*, 21 F.4th at 1024 (noting that there must be "either direct or *inferential* allegations respecting all the material elements necessary to sustain recovery under some viable legal theory'" (emphasis added) (quoting *Twombly*, 550 U.S. at 562)). In particular to the element at issue, IBM alleged that a confusion, if one is found between IBM's use of its Registered Sterling marks, on the one hand, and Sterling Computer's use of its Sterling Marks on the other, "would be because consumers who encounter [Sterling Computers'] goods and services are likely to think that they are provided by, sponsored by, associated with, or otherwise affiliated with IBM." Docket 18 at 43. IBM also alleged in relevant part that to the extent that IBM's use of the IBM STERLING marks "are found to be confusingly similar to the [Sterling Marks], then [Sterling Computers'] use of the [Sterling Marks] implies to consumers that its services come from the same source as IBM's goods and services" and that "[s]uch implications are false, confusing to consumers, and material to consumers' purchasing decisions." *Id.* at 44.

Sterling Computers alternatively requests that this Court nevertheless dismiss IBM's counterclaims two through seven to the extent they challenge marks other than the specific marks—the IBM STERLING and STERLING

marks—challenged by Sterling Computers. Docket 30 at 17. Sterling

Computers argues that dismissal is warranted because the contingency (a

finding of a likelihood of confusion) can only apply to the IBM STERLING and

STERLING marks challenged in Sterling Computers' affirmative claims and is

otherwise impossible with respect to there being any likelihood of confusion

between Sterling Computer's marks and IBM's *other* STERLING-formative

marks. Docket 33 at 9.

Sterling Computers too narrowly reads IBM's counterclaims two through

seven. While these counterclaims are contingent on a finding of a likelihood of

confusion between Sterling Computers' use of its Sterling Marks and IBM's use

of its IBM STERLING and STERLING marks, so too are IBM's counterclaims as

it pertains to its *other* STERLING-formative marks. As IBM alleges, if a

likelihood of confusion is found between Sterling Computers' use of its Sterling

Marks and IBM's use of the IBM STERLING and STERLING marks, then IBM

will also be harmed by such confusion in connection with its STERLING-

formative marks. Docket 18 at 42.

In one final argument, limited to counterclaim six alleging common law

trademark infringement, Sterling Computers requests this Court dismiss that

counterclaim because IBM failed to identify any IBM trademarks allegedly

infringed. Docket 30 at 17–18. In response, IBM argues it identified the marks

in paragraphs 29, 30, 34, and 35 of its pleading and incorporated those

paragraphs in counterclaim six. Docket 32 at 3, 17. Sterling Computers, in its

reply, alleges a new basis for dismissal—it should not be "required to guess

which of the *dozens* of purported trademarks to which IBM claims ownership form the basis of its common law infringement claim." Docket 33 at 11. While Sterling Computers noted that incorporation-by-reference pleading is an acceptable practice in the Eighth Circuit, it argues that such practice is permissible "where the pleading style does not make understanding the claims more burdensome." *Id.* (quoting *Campbell v. Lake Regional Med. Mang., Inc.*, No. 2:19-cv-04124-NKL, 2019 WL 4228894, at * 3 (W.D. Mo. September 5, 2019)).[6]

Even if the manner in which IBM pled counterclaim six makes Sterling Computers' understanding of IBM's sixth counterclaim more burdensome, Sterling Computers has not directed this Court to authority mandating dismissal of the counterclaim as opposed to a less drastic remedy. Also, Sterling Computers raised this argument for the first time in its reply brief, and IBM has not had an opportunity to respond. Therefore, this Court will not address at this juncture whether Sterling Computers has established that it is overly burdened by how IBM styled counterclaim six. *See Auto Owners Ins.*, 2022 WL 5247147, at *5 n.2 (declining to consider an argument on the basis that it was raised for the first time in a reply brief). The Court denies Sterling Computers' motion to dismiss IBM's counterclaims two through seven.

Accordingly, it is hereby

---

[6] Notably, the district court *Campbell* examined whether to grant a motion by the defendant for a more definite statement pursuant to Federal Rule of Civil Procedure 12(e), not a motion to dismiss. *See* 2019 WL 4228894, at *3–4.

ORDERED that Sterling Computers' Motion to Dismiss and Strike

Counterclaims, Docket 29, is denied.

Dated November 5, 2024.

BY THE COURT:

_____
CAMELA C. THEELER
UNITED STATES DISTRICT JUDGE