UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| STERLING COMPUTERS CORPORATION,<br><br>　　　　Plaintiff,<br><br>vs.<br><br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION,<br><br>　　　　Defendant. | 4:23-CV-04150-CCT<br><br>ORDER GRANTING IN PART AND DENYING IN PART IBM'S MOTION TO COMPEL<br><br>[DOCKET NO. 44]<br><br><br>ORDER DENYING AS MOOT IBM'S MOTION TO SHORTEN TIME<br><br>[DOCKET NO. 48] |

**INTRODUCTION**

A discovery dispute is before the court on the complaint and counterclaim of Sterling Computers Corporation and IBM, respectively, which concern the ownership of trademarks using the word "Sterling." See Docket Nos. 1, 18 & 44. IBM directs the court's attention to what it considers an insufficient number of "custodial documents" produced by Sterling to support its motion to compel further production. See generally Docket No. 45. This court has original jurisdiction over the matter as related to the parties' federal law claims, pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a),

and supplemental jurisdiction as to the parties' state and common law claims, pursuant to 28 U.S.C. § 1367.  This opinion resolves IBM's Motion to Compel [Docket No. 44] and IBM's Motion to Shorten Time [Docket No. 48], which the district court referred to this magistrate judge.  Docket Nos. 62 & 84.

## FACTS

Sterling Computers Corporation "was founded in 1996" and characterizes itself as "an award-winning leader in the provision of information technology and computer services, including the resale of software and hardware, to both public sector and private companies, [and] a value-added technology reseller, solution and service provider, and trusted advisor for government, commercial, and educational sectors."  Docket No. 1, ¶ 6.  Sterling "has been a reseller of IBM products since, at least, 2001."  Docket No. 18 at 32, ¶ 44.

Sterling claims ownership of marks that use the word "Sterling" in connection with its information technology and computer services business.  Docket No. 1, ¶¶ 7–20.  IBM counters that it has priority of use of these STERLING-formative marks.  Docket No. 18 at 16–42.  The parties bring against each other various causes of action related to violations of trademark.  See generally Docket Nos. 1 & 18.

In its initial discovery disclosures, Sterling identified seven current or former employees "likely to have discoverable information—along with the subjects of that information."  Docket No. 46-1 at 3.  An additional person, Maggi Jones, Sterling's founder and former president, was identified in answers

to interrogatories as having knowledge of the selection and clearance of Sterling's alleged marks. Docket No. 46-2 at 3–4. IBM collectively refers to these eight persons as "custodians." Docket No. 45 at p. 5. IBM refers to documents produced by Sterling where one of these eight individuals is listed as custodian as "custodial documents." See, e.g., Docket No. 45 at 7.

The impetus for the instant motion is IBM's concern that the low number of custodial documents produced signals a failure on Sterling's part to fulfill its discovery obligations. See generally Docket No. 44 & 45. At the time of the motion's filing, Sterling produced only 126 custodial documents, Docket No. 45 at p. 7, despite the vast reach of IBM's requests on subjects for which the custodians reportedly possessed discoverable information. See generally Docket Nos. 46-3 & 46-4; Docket No. 46-1 at 3–4.

Sterling argues as a threshold matter that IBM's motion should be denied as untimely. Docket No. 61 at 14–16. On the merits, it argues that it "conducted a good faith search" for responsive documents. Id. at 16.

## DISCUSSION

### A.     Whether IBM's Motion is Timely

The district court's Rule 16 scheduling order instructed the parties that "[m]otions to compel discovery should be filed within 14 days after the subject matter of the motion arises, unless a longer period is necessitated for complying with the meet-and-confer requirement of Rule 37(a)(1) of the Federal Civil Procedure." Docket No. 27, ¶ 6. Sterling points to this command and asserts that "IBM waited nearly three months after the subject matter of the

3

motion arose, and over two months after the parties had complied with the meet-and-confer requirement, to file its motion to compel." Docket No. 61 at 15 (emphasis deleted). IBM argues that in the months leading up to its filing of the motion, it attempted to work out the discovery issue without the court's involvement. Docket No. 64 at 17. IBM notes that the case law from this district encourages parties to resolve their disputes without court intervention. Docket No. 64 at 18–19. IBM is correct.

Such encouragement is implicit in the meet-and-confer requirements of Federal Rule of Civil Procedure 37(a) and D.S.D. Local Rule 37.1, which "require that the parties meet informally, either in person or by telephone [or email], and attempt to resolve their differences." Letcher v. Rapid City Reg'l Hosp., Inc., No. CIV. 09-5008-JLV, 2010 WL 1930113, at *2 (D.S.D. May 12, 2010). In furtherance of this policy, courts in this district will consider a motion to compel on the merits, so long as it is filed before the discovery deadline, or without undue delay. Dziadek v. Charter Oak Fire Ins., No. CIV 11-4134-RAL, 2014 WL 820049, at *4 (D.S.D. Mar. 3, 2014) (citations omitted). As explained in Soltesz v. Rushmore Plaza Civic Ctr., this court "certainly does not want to issue rulings that encourage parties to file 'hair-trigger' discovery disputes." No. CIV 11-5012-JLV, 2013 WL 175802, at *5 (D.S.D. Jan. 16, 2013).

IBM produced emails demonstrating its attempt to receive responsive custodial documents or answers to questions related to such only weeks before it moved to compel. See generally Docket No. 46-7. Sterling apparently

4

considered those lines of inquiry closed at an earlier date.  Cf. Docket No. 61 at pp. 14–15.  But this court will not penalize IBM for attempting to resuscitate talks before filing a motion that still preceded the discovery deadline.  The motion will be decided on the merits.

**B.     Whether Sterling Must Supplement Its Search for Responsive Documents**

"[A] party responding to [a request for production] is under an affirmative duty to seek that information reasonably available to it from its employees, agents, or others subject to its control."  McElgunn v. CUNA Mut. Grp., CIV. No. 06-5061-KES, 2008 WL 2717872, at *2 (D.S.D. July 10, 2008).  When a requesting party deems discovery inadequate, it is that party's burden to convince the court intervention is necessary.  Cf. Buergofol GmbH v. Omega Liner Co., No. 4:22-CV-04112-KES, 2024 WL 1329791, at *10 (D.S.D. Mar. 28, 2024).  Mere speculation that an adversary is hiding what should be produced cannot by itself engage the court's involvement.  Roemen v. United States, No. 4:19-CV-04006-LLP, 2023 WL 6808348, at *6 (D.S.D. Oct. 16, 2023).  But where the requesting party shows that the responding party's "search design, search tools, [or] search terms . . . are manifestly unreasonable," or that "the [responding] party has abdicated its responsibility," court involvement is appropriate.  Lifescan, Inc. v. Smith, Civ. No. 17-5552/19-8761 (CCC) (JSA), 2022 WL 20853087, at *2 (D.N.J. July 29, 2022) (quotation omitted); Agerbrink v. Model Serv. LLC, No. 14 Civ. 7841 (JPO) (JCF), 2017 WL 933095, at *5 (S.D.N.Y. Mar. 8, 2017).

### 1. Emails

After studying the briefing, affidavits, and exhibits in this matter, it appears to this court that Sterling has not conducted a thorough search for responsive documents in its custodians' emails. The court understands that Sterling believes it "searched, collected, and produced documents from the most likely sources." Docket No. 61 at p. 7. But this court also understands that, as a practical matter, emails contain information of a more informal nature than what might be found on a marketing drive or in the files of a legal department. And for that reason, emails can offer insight that differs from polished documents. Given that the custodians were identified as persons most likely to possess responsive information, their emails are an obvious target for a comprehensive search. Comparing the production of custodial documents in the low hundreds to the decades-long history of the company, the court is confident that more can be produced, and Sterling is ordered to search the entirety of its eight custodians' emails for documents responsive. Considering the low number of accounts, the court will not accept this task as unduly burdensome.

The court is sympathetic to Sterling's argument that the mere usage of its name in an email signature or email text may constitute a responsive result as to Requests for Production Nos. 3 & 4. These requests are excluded from the court's order.

Also excluded, for all requests, are emails where an employee at IBM is the sender or a recipient. Sterling correctly notes that such documents "should be in IBM's possession too." Docket No. 61 at p. 25. IBM's citation to Xchange Telecom Corp. v. Sprint Spectrum L.P. does not persuade the court to compel production of emails where IBM's employee was the sender or recipient. Docket No. 64 at p. 15 (citing No. 14-CV-54 (GLS/CFH), 2015 WL 773752, at *10 (N.D.N.Y. Feb. 24, 2015)). That court merely declared that "the Federal Rules allow for discovery of documents that are also within the parties' possession." Xchange Telecom Corp., 2015 WL 773752, at *10. Perhaps, but the Federal Rules also instruct a court to "limit the . . . extent of discovery . . . if it determines that the discovery sought . . . can be obtained from some other source that is more convenient, less burdensome, or less expensive." FED. R. CIV. P. 26(b)(2)(C)(i). Given IBM's resources, FED. R. CIV. P. 26(b)(1), the court is confident that a search with similar precision can be conducted in IBM's own offices, thereby reducing the cost and burden to Sterling.

2.  **Request for Production No. 65**

Request for Production No. 65 seeks:

DOCUMENTS sufficient to show the chain of title for [Sterling's] ALLEGED MARKS, including but not limited to DOCUMENTS CONCERNING any sale, assignment, or transfer of ownership of [Sterling] or [Sterling's] ALLEGED MARKS.

Docket no. 63-8 at 15.

IBM states that "despite [Sterling's] website making clear that ownership of the company has changed hands at least once since its founding, [Sterling] has not produced any documents or correspondence relating to this sale or

7

transfer. Yet the chain of title of [Sterling] and its intellectual property are crucial to both IBM's affirmative defense of priority and its declaratory judgment counterclaim." Docket No. 45 at 14. In its response, Sterling argues that "IBM did not request documents or correspondence relating to the change in ownership of Sterling, and the relevance of such documents is questionable in any event." Docket No. 61 at 27. A plain reading of the request shows that IBM did request documents or correspondence relating to the change in ownership of Sterling.

Briefing on this request was slim, with no case law cited. See Docket No. 45 at 14; Docket No. 61 at 27; Docket No. 64 at 16. But the court is reasonably convinced that custodial documents memorializing the "sale, assignment, or transfer of ownership" of Sterling are relevant to the question of ownership of marks. If such exist, Sterling is ordered to produce them. If custodial communications related to the "sale, assignment, or transfer of ownership" of Sterling exist, the court orders production if they discuss the "sale, assignment, or transfer of ownership" of Sterling's intellectual property.

### C.  Proper Form of Response

It is unclear to this court whether Sterling has provided responses to IBM's requests for production that designate which documents produced relate to which requests. The responses filed with this court do not. See, e.g., Docket No. 46-3 at 4 (response merely stating Sterling "will produce non-privileged documents" rather than stating which documents it is producing). If Sterling has not provided such a document, it is ordered to do so.

**D.     Privilege Log**

It is also unclear from the filings whether Sterling has produced a privilege log.  See Docket No. 76 at 4.  If it has not, it is ordered do so, in accordance with the parties' protective order.  Docket No. 35 at 14–15.

## CONCLUSION

Based on the foregoing facts, law, and analysis it is:

ORDERED that IBM's Motion to Compel [Docket No. 44] is granted in part and denied in part in accordance with this opinion.  Plaintiffs will provide, within 30 days of the date of this order, all documents ordered by the court.

IBM's Motion to Shorten [Docket No. 48], which sought to shorten Sterling's time to respond to the Motion to Compel, is denied as moot.

## NOTICE OF RIGHT TO APPEAL

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law.  The parties have fourteen (14) days after service of this order to file written objections pursuant to 28 U.S.C. § 636(b)(1)(A), unless an extension of time for good cause is obtained.  See FED. R. CIV. P. 72(a); 28 U.S.C. § 636(b)(1)(A).  Objections must be timely and specific in order

to require review by the district court. Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED this 19th day of December, 2024.

BY THE COURT:

VERONICA L. DUFFY

United States Magistrate Judge