UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| STERLING COMPUTERS CORPORATION,<br><br>                    Plaintiff,<br><br>    vs.<br><br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION,<br><br>                    Defendant. | 4:23-CV-04150-CCT<br><br><br>ORDER GRANTING STERLING COMPUTER CORPORATION'S MOTION TO COMPEL<br><br>[DOCKET NO. 101] |

**INTRODUCTION**

A discovery dispute is before the court on the complaint and counterclaim of Sterling Computers Corporation ("Sterling") and International Business Machines Corporation ("IBM"), respectively, which concern the ownership of trademarks using the word "Sterling." See Docket Nos. 1, 18 & 44.  Sterling moves for an order compelling IBM to conduct a comprehensive search of the emails of eight IBM custodians[1] for responsive documents. Docket No. 101, at 1.  This court has original jurisdiction over the matter as related to the parties' federal law claims, pursuant to 15 U.S.C. § 1121 and 28

---

[1] The eight IBM custodians are Sherri Ronnebaum, Mark Barrett, David Lingle, Alan Dickinson, Magda Ramos, Renato Jesus, Jayden Fleck, and Valerie Calloway.  Docket No. 101, at 1.

U.S.C. §§ 1331 and 1338(a), and supplemental jurisdiction as to the parties' state and common law claims, pursuant to 28 U.S.C. § 1367. This opinion resolves Sterling's Motion to Compel [Docket No. 101], which the district court referred to this magistrate judge. Docket No. 113.

**FACTS**

**A.   The Dispute**

Sterling Computers Corporation "was founded in 1996" and characterizes itself as "an award-winning leader in the provision of information technology and computer services, including the resale of software and hardware, to both public sector and private companies, [and] a value-added technology reseller, solution and service provider, and trusted advisor for government, commercial, and educational sectors." Docket No. 1, ¶ 6. Sterling "has been a reseller of IBM products since, at least, 2001." Docket No. 18 at 32, ¶ 44.

Sterling claims ownership of marks that use the word "Sterling" in connection with its information technology and computer services business. Docket No. 1, ¶¶ 7–20. IBM counters that it has priority of use of these Sterling-formative marks. Docket No. 18 at 16–42. The parties bring against each other various causes of action related to violations of trademark. See generally Docket Nos. 1 & 18.

Sterling served its discovery requests on January 12, 2024, and IBM provided its responses and objections on February 12, 2024. Docket No. 111, at 3. In the initial disclosures and corresponding responses, IBM identified

eight individuals as having information relevant to the dispute ("IBM custodians"). Docket No. 102, at 3-4.

**B.     IBM's Motion to Compel and the Court's December 19 Order**

On September 19, 2024, IBM filed a motion to compel Sterling to produce "responsive custodial documents." Docket No. 44, at 1. IBM argued that Sterling's production of 126 custodial documents was inadequate and prejudicial. Docket 45, at 3.

This court granted in part the motion to compel. Sterling Computers Corp. v. Int'l Bus. Machines Corp., No. 4:23-CV-04150-CCT, 2024 WL 5168014 (D.S.D. Dec. 19, 2024) (hereafter, "December 19 Order"). First, the court found that the motion was timely despite not being filed within 14 days after the subject matter arose, as required by the district court's Rule 16 scheduling order. Id. at *2. The court reasoned that the delay was caused by the parties' informal attempts to resolve the dispute without court intervention; additionally, the court noted that "courts in this district will consider a motion to compel on the merits, so long as it is filed before the discovery deadline, or without undue delay." Id. (citing Dziadek v. Charter Oak Fire Ins., No. CIV11-4134-RAL, 2014 WL 820049, at *4 (D.S.D. Mar. 3, 2014)).

Next, the court ruled that Sterling must supplement its search for responsive documents, concluding that Sterling had "not conducted a thorough search for responsive documents in its custodians' emails." Id. at *3. Importantly, the court wrote that

> as a practical matter, emails contain information of a more
> informal nature than what might be found on a marketing drive or

3

> in the files of a legal department. And for that reason, emails can offer insight that differs from polished documents. Given that the custodians were identified as persons most likely to possess responsive information, their emails are an obvious target for a comprehensive search. Comparing the production of custodial documents in the low hundreds to the decades-long history of the company, the court is confident that more can be produced, and Sterling is ordered to search the entirety of its eight custodians' emails for documents responsive. Considering the low number of accounts, the court will not accept this task as unduly burdensome.

Id.[2] [3]

**C.     Sterling's Motion to Compel**

In his individual deposition on January 16, 2025, IBM custodian Alan Dickinson testified that he had not searched his emails for documents relevant to this matter. Docket No. 104-5, at 69:23-73:24. To date, IBM has produced 120 emails and 381 custodial documents from the IBM custodians. Docket No. 102, at 7-8. Sterling requested additional responsive documents. Id. at 8. Despite extensive correspondence, the parties could not resolve their disagreement. Id. at 8-17; Docket No. 111, at 11-16.

On February 21, 2025, Sterling filed a motion to compel, requesting an order "compelling IBM to conduct a comprehensive search of the emails of eight IBM custodians for responsive documents" to "Sterling Document Request Nos.

---

[2] The court excluded from its order documents where the mere usage of Sterling's name in an email signature or email text would constitute a responsive result, as well as requests where an employee at IBM was the sender or recipient of an email. December 19 Order, at *3.

[3] The district court later reversed the portion of this Magistrate Judge's order requiring Sterling to "provide[] responses to IBM's requests for production that designate which documents produced relate to which requests." Docket 110, at 4 (quoting December 19 Order).

4

1, 7, 8, 13, 19-20, 22-32, 34-41, 51-54, and 56-65." Docket No. 101, at 1; Docket No. 102, at 1. IBM opposes that motion. Docket No. 111.

## DISCUSSION

The court will first address IBM's arguments against Sterling's motion: (1) that Sterling's motion is untimely; (2) that the law of the case doctrine does not apply; and (3) that IBM's conduct has not prejudiced Sterling. The court will then consider whether IBM must supplement its search for responsive documents.

### A.   Whether Sterling's Motion is Timely

The Scheduling Order requires that motions to compel discovery "should be filed within 14 days after the subject matter of the motion arises, unless a longer period is necessitated for complying with the meet-and-confer requirements of Fed. R. Civ. P. 37(a)(1)." Docket No. 27, at 2. IBM argues that the subject matter of Sterling's motion arose, at the latest, in September 2024 after Sterling reviewed IBM's substantially completed document production. Docket No. 111, at 17. Sterling did not file its motion to compel until February 21, 2025. Docket No. 101. IBM contends that Sterling's delay warrants denying the motion to compel. Id. at 17-18.

The court need not determine whether Sterling's motion was untimely, because even if it were, IBM has not identified any prejudice resulting from Sterling's delay. "Delay alone, without accompanying prejudice to the opposing party, is not enough to deny a motion to compel." Soltesz, No. CIV. 11-5012-JLV, 2013 WL 175802, at *6. Cf. Doe v. Cassel, 403 F.3d 986, 991 (8th Cir.

5

2005) (holding that delay alone in making an untimely motion to amend a pleading, without demonstrated prejudice, is not enough to deny the motion). Because IBM has failed to demonstrate that it was prejudiced by Sterling's delay, denying the motion to compel on untimeliness grounds is improper.

The court notes there is a logical reason for Sterling's delay. IBM had filed a motion to compel Sterling to search its custodian emails on September 13, 2024. Docket No. 44. As that motion concerned a very similar issue contained in Sterling's present motion to compel, Sterling quite logically could have decided it was more efficient to await this court's ruling on IBM's motion before deciding whether to bring a motion of its own. The court resolved IBM's motion on December 19, 2024. Additionally, Sterling did not learn until January 25, 2025, that IBM custodian Dickinson had made no search of his emails or instant messages. Sterling then filed the present motion approximately one month later. The court will not penalize parties for attempts made to conserve the court's time and effort.

**B.      Whether the Law of the Case Doctrine Requires Granting the Motion to Compel**

On December 19, 2024, this court issued an order requiring Sterling to produce certain documents to IBM. Sterling now claims that the December 19 Order is the law of the case and compels IBM to produce similar documents. Docket No. 102, at 17.

"The law-of-the-case doctrine has been described as a means to prevent the relitigation of a settled issue in a case." Gander Mountain Co. v. Cabela's, Inc., 540 F.3d 827, 830 (8th Cir. 2008). "The law of the case doctrine provides

6

that 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" Bird v. Mertens-Jones, 755 F. Supp. 3d 1141, 1151 (D.S.D. 2024) (quoting Little Earth of the United Tribes, Inc. v. U.S. Dep't of Hous. & Urb. Dev., 807 F.2d 1433, 1441 (8th Cir. 1986)).  This doctrine applies both to appellate decisions and final decisions by a district court that have not been appealed, but not to interlocutory orders.  First Union Nat. Bank v. Pictet Overseas Tr. Corp., 477 F.3d 616, 620 (8th Cir. 2007).

  The court finds that the law of the case doctrine does not apply.  "[W]hen a court decides upon a rule of law, that decision should continue to govern ***the same issues*** in subsequent stages in the same case." Gander Mountain Co. v. Cabela's, Inc., 540 F.3d 827, 830 (8th Cir. 2008) (quotation omitted, emphasis added).  "[L]aw of the case does not apply at all where the precise issue differs from the one decided earlier." Flynn v. FCA US LLC, 39 F.4th 946, 954 (7th Cir. 2022).  The facts of Sterling's motion to compel are different than the facts underpinning this court's December 19 Order.  Sterling's motion to compel implicates different production histories and different documents.  Because the December 19 Order does not govern "the same issues" as Sterling's motion to compel, the law of the case doctrine does not apply.

  In any event, the "law of the case is a doctrine of discretion, not a command to the court." Bird v. Mertens-Jones, 755 F. Supp. 3d 1141, 1151 (D.S.D. 2024) (quoting Little Earth, 807 F.2d at 1440).  This court determines in its discretion that applying the law of the case doctrine would not promote

7

the doctrine's goals of judicial efficiency and should therefore not be applied to Sterling's motion to compel.

### C. Whether IBM's Conduct Prejudiced Sterling

IBM next argues that this court should not grant Sterling's motion to compel because Sterling has not demonstrated that it was prejudiced by IBM's conduct. Docket No. 111, at 25. IBM says that, in opposing IBM's previous motion to compel, Sterling argued that its document production did not prejudice IBM. Docket No. 111, at 25-26. But this court will not require parties to maintain the same position when opposing a motion to compel as when supporting a motion to compel. Indeed, if that were the standard, the court would hold IBM to its argument (made in support of its own motion to compel) that Sterling's failure to produce documents prejudiced IBM. Docket No. 45, at 1.

Prejudice in the discovery context exists when an adversary's failure to make discovery impairs a litigant's ability to assess the factual merits of a claim. Bergstrom v. Frascone, 744 F.3d 571, 575 (8th Cir. 2014) (citing Avionic Co. v. Gen. Dynamics Corp., 957 F.2d 555, 559 (8th Cir. 1992)). Sterling satisfies that test. By not providing Sterling with relevant custodial documents, IBM has prejudiced Sterling's ability to assess the factual merits of the case.

### D. Whether IBM Must Supplement Its Search for Responsive Documents

Rule 26(e) of the Federal Rules of Civil Procedure requires parties to supplement their discovery responses "if the party learns that in some material

respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." "To trigger the duty to supplement, a party's initial disclosures must, in some respect, be incomplete or incorrect." Marlin v. Bos. Sci. Corp., No. 8:20CV181, 2021 WL 424440, at *2 (D. Neb. Feb. 8, 2021) (quotation omitted, cleaned up).

The party seeking an order compelling discovery has the initial burden to show that (1) the discovery was actually requested and (2) that the discovery is relevant. See Fed. R. Civ. P. 37(a)(3); Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1992). On the first prong, IBM contends that Sterling's discovery requests did not include emails of the IBM custodians. See Docket 111, at 21 ("Several of [Sterling's] RFPs do not implicate email communications on their face.").

The court finds that Sterling's requests for production encompassed emails, and therefore the discovery it seeks was actually requested. Sterling's First Request for Production defined "[d]ocuments" as including "electronic mail or email." Docket 112-1, at 3. The court has reviewed the requests that IBM claims "do not implicate email communications on their face." Docket 111, at 21. Of those 18 requests IBM identifies, 17 sought "documents," which is defined to include emails. Compare id. with Docket 112-2. Accordingly, the court finds that Sterling's requests for production included requests for emails.

The next prong Sterling must satisfy is demonstrating that the information it requests is relevant. "The party seeking discovery must make a

9

threshold showing of relevance before production of information, which does not reasonably bear on the issues in the case, is required." Gowan v. Mid Century Ins. Co., 309 F.R.D. 503, 509 (D.S.D. 2015) (quotation omitted).  "Mere speculation that information might be useful will not suffice; litigants seeking to compel discovery must describe with a reasonable degree of specificity, the information they hope to obtain and its importance to their case." Id. (quotation omitted).

Here, IBM appears to concede that the requested information is relevant with respect to 6 IBM custodians: Sherri Ronnebaum, Mark Barrett, David Lingle, Alan Dickinson, Magda Ramos, and Valerie Calloway.  See Docket 111.  But for Renato Jesus and Jayden Fleck, IBM says that neither individual was identified as having information relevant to this litigation; instead, both *furnished* information that IBM provided in its interrogatory responses.  Id. at 23-24.  In earlier correspondence, IBM claimed that Jesus and Fleck "are finance employees not likely to have any responsive emails to these requests." Docket 104-10, at 4.  IBM contends that Sterling "apparently recognizes that it is unlikely that either of these individuals have responsive documents, as in its proposed compromise, it agreed IBM did not need to seek email communications from the files of either of them." Id.

Sterling disagrees.  It says that IBM's argument is "non-sensical," because "the fact that Fleck and Jesus furnished information provided in IBM's interrogatory responses confirms they have relevant knowledge." Docket 114, at 4-5.  Sterling also says that IBM's argument based on Sterling's proposed

compromise is improper and that, under that standard, IBM should be held to its own proposed compromise of searching and producing the emails of Alan Dickinson and Magda Ramos.  Id. at 5.

"The threshold for relevance is quite minimal."  United States v. Nadeau, 598 F.3d 966, 968 (8th Cir. 2010) (quoting United States v. Holmes, 413 F.3d 770, 773 (8th Cir. 2005)).  "Relevance encompasses any matter that could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Kirschenman v. Auto-Owners Ins., 280 F.R.D. 474, 481 (D.S.D. 2012), objections overruled, No. CV 09-4190-KES, 2012 WL 13040020 (D.S.D. Apr. 18, 2012) (cleaned up, quotation omitted).

The court finds that Sterling has cleared this low bar for demonstrating that Fleck's and Jesus's emails are relevant.  While Fleck and Jesus were not initially identified as having information relevant to this litigation, they did furnish information to IBM, which necessarily means that they have access to relevant information.  See, e.g., *furnish*, Meriam-Webster Dictionary Online, (defining "furnish" as "to provide with what is needed; supply, give").[4]  Because the documents in Fleck's and Jesus's possessions are relevant to this case, the court finds that Sterling's requested documents are relevant with respect to all 8 IBM custodians.

Because Sterling has demonstrated that it requested relevant emails from 8 IBM custodians, the burden shifts to IBM to "show specific facts

---

[4] https://www.merriam-webster.com/dictionary/furnish (last visited May 1, 2025).

demonstrating that the discovery is not relevant, or how it is overly broad, burdensome, or oppressive." Burke v. Ability Ins. Co., 291 F.R.D. 343, 349 (D.S.D. 2013). "The articulation of mere conclusory objections that something is overly broad, burdensome, or oppressive is insufficient to carry the resisting party's burden—that party must make a specific showing of reasons *why* the relevant discovery should not be had." Id. (quotation omitted).

### 1. Sherri Ronnebaum and Valerie Calloway

Sherri Ronnebaum and Valerie Calloway are IBM attorneys. IBM has produced 9 documents and identified 144 documents on its privilege log for Ronnebaum and identified 41 documents on its privilege log for Calloway. Docket No. 111, at 24. IBM contends that it adequately searched these attorneys' files, but that it "declined to search every email with an IBM trademark attorney that contained the word 'Sterling' because that would have been overbroad." Id. at 24.

The court finds that IBM's search was unreasonable and must be supplemented. IBM admits that it did not "search every email with an IBM trademark attorney that contained the word 'Sterling' " because it believed that search would be overbroad. Docket No. 111, at 24. That belief likely stemmed from this court's December 19 Order, which stated that

> The court is sympathetic to Sterling's argument that the mere usage of its name in an email signature or email text may constitute a responsive result as to Requests for Production Nos. 3 & 4. These requests are excluded from the court's order.

December 19 Order, at *3.

12

But that ruling was unique to Sterling. Sterling's name is the same as the disputed Sterling-mark. As a result, a search of Sterling custodians' files for documents containing the word "Sterling" would turn up any email that had a company signature or discussed company business. That search would therefore be overbroad. But IBM does not have that problem. IBM custodians do not have the word "Sterling" in all their emails; instead, a search of the IBM custodians' files for the word "Sterling" would identify relevant emails involving either Sterling the company or the disputed Sterling-mark.

Moreover, "[t]he mere statement that an interrogatory or request for production was overly broad . . . is not adequate to prevail on such an objection." Docket 114, at 16 (quoting Dziadek, 2014 WL 820049, at *4). "On the contrary, the party resisting discovery must show specifically how . . . each interrogatory or request for production is not relevant or how each question is overly broad, burdensome, or oppressive." St. Paul Reinsurance Co. v. Com. Fin. Corp., 198 F.R.D. 508, 512 (N.D. Iowa 2000) (quotation omitted, cleaned up). "Unless the task of producing or answering [a discovery request] is unusual, undue or extraordinary, the general rule requires the entity answering or producing the documents to bear that burden." Lillibridge v. Nautilus Ins. Co., No. CIV. 10-4105-KES, 2013 WL 1896825, at *6 (D.S.D. May 3, 2013) (citation omitted).

IBM has provided no support for its position that searching every email with an IBM trademark attorney that contained the word "Sterling" is overbroad. Accordingly, the court holds that IBM's initial search of

13

Ronnebaum's and Calloway's emails was unreasonable, and orders IBM to search every email for Ronnebaum and Calloway containing the word "Sterling." If IBM determines that any emails such a search turns up are subject to privilege, it must amend its privilege log to include any withheld emails.

### 2. Mark Barrett and David Lingle

Sterling requests that IBM search the emails of Mark Barrett and David Lingle. IBM contends that it has already searched both of their emails. Docket No. 111, at 23. To date, Sterling has received 74 emails and 158 custodial documents for Mark Barrett and 46 emails and 125 custodial documents for David Lingle. Docket No. 102, at 7. Sterling says that these documents are insufficient, reflecting the fact that IBM has not conducted a reasonable search of Barrett and Lingle's emails. Id. at 16. IBM responds that it "produced all responsive documents found in a reasonable search." Docket No. 111, at 23. Further, IBM has provided reasons why Barrett and Lingle would not have many responsive emails—Barrett testified that Sterling was not among the top 50 resellers in the United States for IBM, and Lingle testified that he could not recall ever working with Sterling. Id.

"[A] party responding to [a request for production] is under an affirmative duty to seek that information reasonably available to it from its employees, agents, or others subject to its control." McElgunn v. CUNA Mut. Grp., CIV. No. 06-5061-KES, 2008 WL 2717872, at *2 (D.S.D. July 10, 2008). When a requesting party deems discovery inadequate, it is that party's burden to

14

demonstrate that court intervention is necessary.  Cf. Buergofol GmbH v. Omega Liner Co., No. 4:22-CV-04112-KES, 2024 WL 1329791, at *10 (D.S.D. Mar. 28, 2024).  Mere speculation that an adversary is hiding what should be produced cannot by itself engage the court's involvement.  Roemen v. United States, No. 4:19-CV-04006-LLP, 2023 WL 6808348, at *6 (D.S.D. Oct. 16, 2023).  But where the requesting party shows that the responding party's "search design, search tools, [or] search terms . . . are manifestly unreasonable," or that "the [responding] party has abdicated its responsibility," court involvement is appropriate.  Lifescan, Inc. v. Smith, Civ. No. 17-5552/19-8761 (CCC) (JSA), 2022 WL 20853087, at *2 (D.N.J. July 29, 2022) (quotation omitted); Agerbrink v. Model Serv. LLC, No. 14 Civ. 7841 (JPO) (JCF), 2017 WL 933095, at *5 (S.D.N.Y. Mar. 8, 2017).

    Sterling argues that IBM's search is insufficient because IBM stated that it would provide documents "sufficient to show" certain types of information sought, rather than "all" responsive documents.  Docket No. 104-6, at 3.  Sterling's requests for production included requests for documents "sufficient to show" information, but also included requests for "all" documents relating to certain information.  See Docket 112-1.  Despite that, IBM noted in email correspondence that it would only be providing "documents sufficient to show certain types of information sought."  Docket No. 104-6, at 7.

    Sterling argues that by providing only documents "sufficient to show" certain issues, IBM's search was deficient.  See id. at 2 (Sterling's counsel stating that "Sterling made it clear from the beginning that unless a request

15

expressly seeks documents 'sufficient to show' something or includes otherwise limiting language, IBM was obligated to produce all non-privileged, responsive information located in the course of a reasonable search").[5]  Sterling states that "IBM cannot reasonably suggest it conducted a reasonable search for responsive documents based on a false claim that it only promised Sterling that it would produce documents "sufficient to show" the requested information."  Docket No. 114, at 11.

It is Sterling's burden to demonstrate that court intervention is necessary.  Cf. Buergofol GmbH, 2024 WL 1329791, at *10.  The court finds that Sterling has shown that IBM's "search design, search tools, [or] search terms . . . are manifestly unreasonable."  Lifescan, Inc, 2022 WL 20853087, at *2 (quotation omitted).  Sterling requested ***all*** documents for certain requests for production, yet IBM admits that it only searched for documents "sufficient to show" certain facts.  Docket No. 111, at 21.  IBM has not argued why searching for "all" documents rather than documents "sufficient to show" would be "vague, overbroad, unlimited in scope, burdensome, privileged, or irrelevant."  Brown Bear v. Cuna Mut. Grp., 266 F.R.D. 310, 327 (D.S.D. 2009).

Because the court concludes that IBM has failed to conduct a reasonable search of Barrett's and Lingle's emails, it grants Sterling's motion to compel

---

[5] IBM seems to imply that it had a tacit discovery agreement that Sterling did not abide by.  See Docket No. 111, at 5; Docket No. 114, at 9-11.  The court finds that no agreement existed.  While IBM offered to produce documents and communications "sufficient to show" the information sought, Sterling took issue with that "sufficient to show" language and did not accept IBM's proposal.  Compare Docket No. 112-2 with Docket No. 112-5, at 3.

and orders IBM to conduct a reasonable search of Barrett's and Lingle's emails for all responsive documents.

### 3. Alan Dickinson and Magda Ramos

Alan Dickinson is IBM's Director of Marketing and Magda Ramos is Product Marketing Director of IBM Sustainability Software. Docket 111, at 11-12. During discovery, IBM identified Dickinson and Ramos as "persons most knowledgeable of IBM's marketing or advertising of goods and services in connection with the IBM STERLING-formative Marks in the United States." Docket 102, at 3-4 (quoting Docket No. 104-2, at 18-19). During negotiations, IBM proposed a compromise to "search and produce the emails of Alan Dickinson and Magda Ramos for documents responsive to requests 1, 7, 8, 13, 19-20, 22-32, 34-41, 51-54, [and] 56-65." Docket 112-14 at 5.

In his individual deposition on January 16, 2025, Dickinson testified that he had not searched his emails for documents relevant to this matter; rather, his search was limited to the "Box" folder containing document content. Docket 104-5, at 69:23-73:24. To date, IBM has provided 0 emails and 62 custodial documents for Dickinson and 0 emails and 27 custodial documents for Ramos. Docket 102, at 7.

The lack of emails for either Dickinson and Ramos, combined with the fact that Dickinson admitted in his testimony that he had not searched his emails, leads the court to the conclusion that IBM's "search design, search tools, [or] search terms . . . are manifestly unreasonable," or that IBM "has abdicated its responsibility" to conduct a reasonable search. Lifescan, Inc.,

17

2022 WL 20853087, at *2.  Dickinson was so knowledgeable about this case that IBM designated him as its corporate designee under Rule 30(b)(6).  Docket No. 114, at 15.  Ramos is important to this dispute as well, as she serves as Dickinson's boss.  Id.  It is simply unrealistic to conclude that a reasonable search of their files would reveal no responsive emails whatsoever.

Because the court concludes that IBM has failed to conduct a reasonable search of Dickinson's and Ramos's emails, it grants Sterling's motion to compel and orders IBM to conduct a reasonable search of Dickinson's and Ramos's emails for responsive documents.

### 4. Renato Jesus and Jayden Fleck

Renato Jesus and Jayden Fleck are finance employees at IBM.  Docket 104-10, at 4.  To date, IBM has provided no emails or custodial documents for either Jesus or Fleck.  Docket 102, at 7.  IBM concedes that it did not search Jesus's or Fleck's emails because "neither individual was identified as having information relevant to this litigation."  Docket 111, at 23.

As discussed above, the court concludes that Jesus's and Fleck's emails are relevant.  Supra at 10-12.  Aside from relevance, IBM provides no justification for why it failed to search Jesus's or Fleck's emails.  Because this court finds that those emails are relevant, it grants Sterling's motion to compel and orders IBM to conduct a reasonable search of Jesus's and Fleck's emails for responsive documents.

## CONCLUSION

Based on the foregoing facts, law, and analysis it is:

18

ORDERED that Sterling's Motion to Compel [Docket No. 101] is granted in accordance with this opinion.  IBM will provide to Sterling, within 30 days of the date of this order, all documents ordered by the court.

### NOTICE OF RIGHT TO APPEAL

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law.  The parties have fourteen (14) days after service of this order to file written objections pursuant to 28 U.S.C. § 636(b)(1)(A), unless an extension of time for good cause is obtained.  See FED. R. CIV. P. 72(a); 28 U.S.C. § 636(b)(1)(A).  Objections must be timely and specific in order to require review by the district court.  Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED this 7th day of May, 2025.

BY THE COURT:

_____
VERONICA L. DUFFY
United States Magistrate Judge