UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| STERLING COMPUTERS CORPORATION,<br><br>　　　　　　　　Plaintiff,<br><br>　vs.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION,<br><br>　　　　　　　　Defendant. | 4:23-CV-04150-CCT<br><br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR LEAVE TO AMEND ITS COMPLAINT** |

Plaintiff Sterling Computers Corporation moves to for leave to amend its complaint. Docket 94. Defendant International Business Machines Corporation (IBM) opposes the motion. Docket 100.

## BACKGROUND

In an order dated November 5, 2024, Docket 71, the Court stated the facts as alleged in Sterling Computers' complaint, Docket 1, and in IBM's answer and counterclaim, Docket 18. Therefore, in this order, the Court recites the additional or different allegations in Sterling Computers' proposed amended complaint at Docket 95-1.

IBM obtained international registrations on February 24, 2020, with the World Intellectual Property Office (WIPO) for the word marks "STERLING" and "IBM STERLING" in International Classes 9, 35, and 42. Docket 95-1 ¶ 36. The registrations were based on IBM's French applications dated November 19,

1

2014. *Id.* Sterling Computers identified the "goods/services" in IBM's WIPO registration for the IBM STERLING mark, *Id.* ¶ 37, and the STERLING mark, *Id.* ¶ 38. Also in February 2020, IBM applied for extensions of protection in International Classes 9, 35, and 42 for IBM STERLING and STERLING in the United States and in other countries, Docket 95-1 ¶ 39, using the Madrid Protocol, which IBM contends "allows international trademark applicants to retain a priority date based on the date of filing rather than the date of first use[,]" Docket 100 at 10.

On May 28, 2020, IBM's application to extend protection for IBM STERLING to the United States under § 66(a) of the Lanham Act, 15 U.S.C. § 1141f(a), was assigned United States Trademark Application Serial Number 79/286,424 (hereinafter called the '424 Application). Docket 95-1 ¶ 40. Thereafter, and in response to a likelihood of confusion refusal with International Class 42, IBM requested to divide the '424 Application into one parent application for International Class 42 and one child application for International Classes 9 and 35. *Id.* According to Sterling Computers, IBM stated in the application that the request was "so that the mark may proceed toward publication for opposition for those goods and services to which the refusal does pertain." *Id.* The request to divide was granted, and the child application for IBM STERLING matured to Registration Number 6,406,027 (hereinafter called the '027 Registration). *Id.* The '424 Application remains pending. *Id.*

On June 4, 2020, IBM's application to extend protection for STERLING to

2

the United States pursuant to § 66(a) of the Lanham Act, 15 U.S.C. § 1141f(a), was assigned United States Trademark Application Serial Number 79/286,659 (hereinafter called the: '659 Application). *Id.* The '659 Application remains pending. *Id.*

Sterling Computers notes that to obtain the requested registrations in the United States, "IBM filed a declaration, under the penalty of perjury under the laws of the United States, that at the time the declaration was executed, IBM had a *bona fide* intent to use the mark in commerce in the United States on or in connection with the goods/services identified in the international application." *Id.* ¶ 41. Sterling Computers also notes that IBM filed similar declarations of intent to use when it applied for registrations in other countries under the Madrid Protocol. *Id.* ¶¶ 42, 43.

Sterling Computers, who was aware of IBM's registrations, alleges that it viewed them and IBM's corresponding declarations of use to mean "that IBM was attempting to expand its trademark rights—in the United States and elsewhere—of term 'STERLING' beyond the narrow services identified in IBM's other marks incorporating STERLING, to a broad and wide-ranging list of information technology and computer products and services that significantly overlap with Sterling's existing business and Sterling's use of its marks in connection with such products and services." *Id.* ¶ 44. Sterling Computers claims that based on this belief, it tried to "negotiate with IBM to limit the scope of IBM's use of the term 'Sterling,'" *Id.* ¶ 46, which negotiations failed and "forced" Sterling Computers to initiate the present lawsuit to prevent IBM

from expanding its use of the term STERLING, *Id.* ¶ 48.

Sterling Computers learned from IBM witnesses that IBM's declarations of intended use, which Sterling Computers relied on, "were not truthful[.]" *Id.* ¶¶ 49, 50. More specifically, Sterling Computers claims that witness testimony establishes that "IBM did not, at the time the declarations were executed, have a *bona fide* intent to use IBM STERLING and STERLING in connection with a significant number of goods and services identified in the WIPO Registrations." *Id.* ¶ 49. Some of those goods and services include: "the IBM STERLING or STERLING marks on hardware"; business consulting services identified under International Class 35 under IBM STERLING or STERLING; and "with the exception of software as a service," IBM's other services under IBM STERLING or STERLING identified in the WIPO Registrations under International Class 42. *Id.* ¶¶ 50–52.

Sterling Computers also contends that "IBM knew the declarations were untrue[,]" *Id.* ¶ 87, and "submitted those declarations of intent to use with the intent to deceive the public and improperly expand the scope of its trademark rights[,]" *Id.* ¶ 88. Because of IBM's conduct, Sterling Computers asserts that IBM's '027 Registration is subject to cancellation. *Id.* ¶¶ 99, 107. Sterling Computers also claims it is entitled to damages because it was misled, *Id.* ¶ 89, and harmed, *Id.* ¶¶ 94, 116, by IBM's declarations of intended use.

Sterling Computers seeks to add causes of action for deceit under SDCL § 20-10-3, cancelation of trademark registration for no bona fide intent to use, cancellation of trademark registration for fraud on the United States Patent

and Trademark Office (USPTO), and civil liability for false or fraudulent trademark registration. Docket 95 at 5; Docket 95-1 ¶¶ 84–116. Sterling Computers also seeks to add requests for compensatory and punitive damages. Docket 95-1 (requests located in prayer for relief paragraphs five and six). IBM opposes the motion to amend, asserting Sterling Computers has not shown good cause to amend, prejudice will result to IBM, and each proposed claim is futile. Docket 100.

## LEGAL STANDARD

A decision to allow a party to amend a pleading is a matter of the court's discretion. *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 714 (8th Cir. 2008). Under Federal Rule of Civil Procedure 15(a), leave to amend is to be "freely" given "when justice so requires." Fed. R. Civ. P. 15(a)(2). However, "parties do not have an absolute right to amend their pleadings, even under this liberal standard." *Sherman*, 532 F.3d at 715 (citation omitted). "A district court appropriately denies the movant leave to amend if 'there are compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment.'" *Id.* (quoting *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.,* 406 F.3d 1052, 1065 (8th Cir. 2005)).

Further, when, as here, "a party files for leave to amend outside of the court's scheduling order, the party must show cause to modify the schedule." *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 497 (8th Cir. 2008) (citation omitted). This showing of good cause "is not optional." *Sherman*, 532 F.3d at

716. "The primary measure of good cause is the movant's diligence in

attempting to meet the order's requirements." *Hartis v. Chicago Title Ins. Co.*,

694 F.3d 935, 948 (8th Cir. 2012) (quoting *Sherman*, 532 F.3d at 716).

"[P]rejudice to the nonmovant resulting from modification of the scheduling

order may also be a relevant factor[.]" *Sherman*, 532 F.3d at 717.

## DISCUSSION

### I.    Diligence

Sterling Computers asserts that the proposed amendments derive from

recent depositions of two of IBM's witnesses—Magda Ramos and Alan

Dickinson—wherein Sterling Computers learned for the first time that IBM

submitted false declarations of intended use to the USTPO. Docket 96 at 10.

According to Sterling Computers, it is IBM's "false declarations that form the

basis of Sterling's new claims." Docket 109 at 29.

Sterling Computers filed this motion for leave to amend on January 29,

2025. Docket 94. Ms. Ramos was deposed on October 31, 2024, Docket 95-6,

and Mr. Dickinson was initially deposed on October 1, 2024, Docket 95-3.

However, on December 10, 2024, this Court granted Sterling Computers'

motion for more time to depose Mr. Dickinson on the topics that IBM

designated for the 30(b)(6) deposition. Docket 96 at 19–20 (citing Docket 85 at

8). According to Sterling Computers, IBM had originally refused to make Mr.

Dickinson available in his individual capacity in response to the notice of an

individual deposition on September 12, 2024, and that such refusal required

Sterling Computers to file a subpoena. *Id.* at 20. Then, according to Sterling

Computers, IBM moved to quash a subpoena on December 3, 2024. *Id.*
Ultimately, the parties were able to come to an agreement, after which the
individual and 30(b)(6) depositions of Mr. Dickinson occurred on January 15
and 16, 2025. *Id.* at 20–21.

On January 22, 2025, which was approximately a week after Mr.
Dickinson's deposition, Sterling Computers "provided IBM notice of [its] intent
to seek leave to file an amended complaint." *Id.* at 17. Sterling Computers
suggested that a meet and confer occur and proposed two dates; however, IBM
indicated its intent to oppose the motion for leave to amend and that no meet
and confer was required or necessary. *Id.* Shortly thereafter, Sterling
Computers filed the current motion for leave to amend its complaint. *Id.* Based
on the above sequence of events, Sterling Computers argues that it acted
diligently and has shown good cause for its proposed amendment. *Id.* at 13–18.

In response, IBM argues that Sterling Computers was not diligent and
did not show good cause because it could have more timely pursued discovery
on the topic of IBM's declarations related to IBM STERLING and STERLING.
Docket 100 at 29. IBM claims that Sterling Computers "has always had a
concern about IBM purportedly expanding its trademark rights in IBM
STERLING and STERLING[.]" *Id.* at 33 (emphasis omitted). It also notes that its
WIPO applications "were public, including that they were filed on an intent-to-
use basis." *Id.* at 30. Thus, according to IBM, Sterling Computers was "on
notice of the goods and services on which IBM uses the marks" and could have
gathered new fact evidence related to IBM's use of IBM STERLING and

STERLING. *Id.*

Further supporting its argument that Sterling Computers did not act diligently, IBM notes that Sterling Computers served requests for production in January 2024, asking IBM for "[d]ocuments sufficient to identify all goods and services sold or intended to be sold by [IBM] under or in connection with any IBM STERLING-formative Mark." *Id.* at 31 (first alteration in original) (emphasis omitted). IBM objected to the request as "neither relevant to any claim or defense of any party in this Litigation nor proportional to the needs of the case"; however, it contends Sterling Computers could have attempted to overcome IBM's objection or amended its complaint earlier to overcome the objection. *Id.* at 30–32.

The Court finds that Sterling Computers sufficiently established that it did not become aware of the facts underlying its new claims until the depositions of Ms. Ramos and Mr. Dickinson. While Sterling Computers was aware of the substance of IBM's WIPO registrations and received documents from IBM in discovery related to IBM's use of IBM STERLING and STERLING, this does not mean Sterling Computers was aware or should have been aware of the nature of IBM's true intent to use IBM STERLING and STERLING at the time it applied for its registrations. Moreover, contrary to IBM's characterization otherwise, the circumstances here are not akin *Aviva Sports, Inc. v. Fingerhut Direct Marketing, Inc.*, Civil No. 09-1091 (JNE/JSM), 2010 WL 4193076 (D. Minn. Oct. 7, 2010), *Leftwich v. County of Dakota*, Civ. No. 18-1144 (JNE/BRT), 2019 WL 1530160 (D. Minn. Apr. 9, 2019), or *Kozlov v.*

8

*Associated Wholesale Grocers, Inc.*, 818 F.3d 380 (8th Cir. 2016).

In *Aviva*, the plaintiff acknowledged that it "knew virtually the same facts it learned" during the depositions that were taken shortly before the motion for leave to amend the complaint. 2010 WL 4193076, at *7. And in *Leftwich*, the plaintiff did not even attempt to take fact depositions until after the deadline for amending pleadings had passed, and further, the plaintiff was on notice well before the deadline that fact depositions might disclose such information. 2019 WL 1530160, at *6. Finally, in *Kozlov*, the plaintiff sought to amend the complaint two months before trial. 818 F.3d at 394. The district court denied the request for lack of diligence in pursing the amendment, and on appeal, the Eighth Circuit affirmed, concluding that the plaintiff had access to the evidence of the employee's medical condition at least eighteen months prior to the motion to amend. *Id.* at 394–95.

Finally, the Court finds that Sterling Computers acted diligently by filing its motion for leave to amend shortly after becoming aware of the newly discovered facts. The Court acknowledges that Sterling Computers' motion comes nearly nine months after the May 10, 2024 deadline for amending pleadings. Docket 27. However, since this lawsuit started, the parties have filed multiple joint motions to modify the scheduling order to extend, among other deadlines, the deadline to complete fact depositions. Dockets 39, 68, 86, 89. Particularly relevant here, the parties' January 3, 2025 joint motion requested a deadline of January 16, 2025 to complete Mr. Dickinson's deposition. Docket 89 at 2. The Court granted this motion and the prior joint motions to modify

the scheduling order. Dockets 40, 69, 87, 92. And consistent with the parties'
most recent joint request, Sterling Computers completed Mr. Dickinson's
deposition on January 16, 2025, Docket 96 at 19, and promptly thereafter,
Sterling Computers filed this motion for leave to amend its complaint, Docket
94.

## II.     Prejudice

IBM contends that granting Sterling Computers' motion will cause it
unfair prejudice. Docket 100 at 9, 33. In IBM's view, Sterling Computers'
proposed amendments reflect a "last-minute shift in case theory." *Id.* at 9. It
also claims that Sterling Computers' amendments will require IBM to conduct
additional discovery into, at the very least, Sterling Computers' new damages
theory when the parties, at Docket 93, had previously stipulated to withdraw
and not pursue actual damages, Docket 100 at 34. Finally, IBM asserts that it
will be prejudiced if Sterling Computers intends to seek additional discovery on
its new claims. *Id.* at 35.

Although "[t]he primary measure of good cause is the movant's
diligence[,]" *Sherman*, 532 F.3d at 716, "[a] secondary measure of good cause is
'prejudice to the nonmovant resulting from modification of the scheduling
order[,]'" *Cup O' Dirt LLC v. Badlands Airtime, LLC*, 4:19-CV-04031-KES, 2021
WL 680173, at *4 (D.S.D. Feb. 22, 2021) (citation omitted). "The burden of
proving prejudice lies with the party opposing the motion." *Cup O' Dirt*, 2021
WL 680173, at *4 (citation omitted). "The Eighth Circuit has said that
'[m]otions that would prejudice the nonmoving party by requiring a re-opening

of discovery with additional costs, a significant postponement of the trial, and a likely major alteration in trial tactics and strategy are particularly disfavored.'" *Roemen v. United States*, 4:19-CV-4006-LLP, 2021 WL 2351684, at *6 (D.S.D. June 9, 2021) (alteration in original) (quoting *Kozlov*, 818 F.3d at 395).

The Court determines that granting Sterling Computers' motion to amend its complaint will not cause IBM unfair prejudice. A trial date has not been set, and the time for filing dispositive motions has not expired. Docket 92. Also, the Court does not view Sterling Computers' amendments to be a last-minute shift in case theory. Further, although fact discovery has closed, the parties are still actively engaged in the discovery process and continue to request modification of the Court's scheduling order, with the latest request being granted on February 26, 2025. Docket 107. The Court understands that granting Sterling Computers' motion to amend will delay the resolution of this case. However, on this record, IBM has not met its burden of establishing unfair prejudice.

## III.  Futility

"Futility is always a basis to deny leave to file an amended complaint." *Roemen*, 2021 WL 2351684, at *7 (quoting *A.H. v. St. Louis City*, 891 F.3d 721, 730 (8th Cir. 2018)). Futility in this regard "means the district court has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010) (citation omitted). Under that standard, the plaintiff must plead "sufficient factual matter,

11

accepted as true, to 'state a claim to relief that is plausible on its face.'"
*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp.* v.
*Twombly*, 550 U.S. 544, 570 (2007)). Therefore, "[s]tating an adequate claim for
relief requires more than 'a formulaic recitation of the elements of a cause of
action.'" *Delker v. MasterCard Int'l, Inc.*, 21 F.4th 1019, 1024 (8th Cir. 2022)
(quoting *Twombly*, 550 U.S. at 555). "Matters outside the pleading may not be
considered when conducting a futility analysis under Rule 12(b)(6) other than
some public records, materials that do not contradict the complaint, or
materials that are 'necessarily embraced by the pleadings.'" *Roemen*, 2021 WL
2351684, at *7 (citation omitted).

IBM contends that the new claims proposed by Sterling Computers are
futile. Docket 100 at 13. IBM first argues that Sterling Computers lacks
standing to assert each proposed claim. *Id.* at 14–18. IBM next asserts that
Sterling Computers' fraud claims fail because the allegations in the amended
complaint do not satisfy the heightened pleading requirements of Federal Rule
of Civil Procedure 9(b). *Id.* at 18–23. Finally, IBM contends that Sterling
Computers failed to allege sufficient facts to support an inference that IBM
lacked a bona fide intent to use IBM STERLING and STERLING on some or all
of the goods identified in the application. *Id.* at 23–28. The Court addresses
Sterling Computers' proposed new claims in turn.

### A. Deceit under SDCL § 20-10-3

Count VII in Sterling Computers' amended complaint alleges an action
for deceit under SDCL § 20-10-3, which concerns practices of deceit intended

to defraud the public or a particular class of persons. Docket 95-1 ¶¶ 84–94. In support of this claim, Sterling Computers alleges that IBM submitted untrue declarations regarding its intent to use IBM STERLING and STERLING in the United States and elsewhere in connection with the goods and services identified in IBM's WIPO registrations. *Id.* ¶ 86. Sterling Computers further asserts that IBM knew its declarations were untrue, *Id.* ¶ 87, and that "IBM submitted those declarations of intent to use with the intent to deceive the public and improperly expand the scope of its trademark rights[,]" *Id.* ¶ 88. Sterling Computers also claims it "was misled by IBM's deceit" because IBM's registrations caused it "significant concern that IBM was seeking to expand the scope of its use of the term 'STERLING' beyond the narrow services identified in IBM's existing marks incorporating 'STERLING,' to a broad and wide-ranging list of information technology and computer products and services that significantly overlap with Sterling's existing business and Sterling's use of its marks in connection with such products and services." *Id.* ¶ 89.

In response, IBM contends, among other arguments, that Sterling Computers' deceit claim fails as a matter of law because Sterling Computers did not "state with particularity the circumstances constituting fraud" as required by Rule 9(b). Docket 100 at 7 (quoting Fed. R. Civ. P. 9(b)). In its reply, Sterling Computers asserts that it met the heightened pleading standards under Rule 9(b) for this claim by alleging IBM's state of mind and intent at the time it filed its applications. Docket 109 at 4. Sterling Computers also directs this Court to SDCL § 20-10-2, which identifies types of deceit, and claims that

13

"[t]he relevant forms of deceit for this case are fraudulent misrepresentation [SDCL § 20-10-2(1)] and negligent misrepresentation [SDCL § 20-10-2(2)]." Docket 109 at 13–14.

But Sterling Computers' amended complaint asserts a deceit cause of action under SDCL § 20-10-3, not under SDCL § 20-10-2. Docket 95-1 ¶¶ 84–94. Under SDCL § 20-10-3, "[o]ne who practices a deceit with intent to defraud the public, or a particular class of persons, is deemed to have intended to defraud every individual in that class, who is actually misled by the deceit." In contrast, SDCL § 20-10-2 describes "deceit within the meaning of § 20-10-1[.]" SDCL § 20-10-2. And under SDCL § 20-10-1, "[o]ne who willfully deceives another, with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers." Importantly, as it pertains to Sterling Computers' deceit claim, there is only the allegation that IBM acted with the intent to *deceive the public*. *See* Docket 95-1 ¶ 88. Therefore, the types of deceit described in SDCL § 20-10-2 are inapplicable to the question whether Sterling Computers sufficiently stated its particular cause of action under SDCL § 20-10-3.

Looking then to whether Sterling Computers' deceit claim brought under SDCL § 20-10-3 is futile, the Court notes that any claim of fraud, including deceit, must meet the heightened pleading standards of Federal Rule of Civil Procedure 9(b). *See Broin & Assocs., Inc. v. Genencor Int'l, Inc.*, 232 F.R.D. 335, 340 (D.S.D. 2005). Under that rule, the pleading "party must state with particularity the circumstances constituting fraud[.]" Fed. R. Civ. P. 9(b). This

14

means that the amended complaint "'must identify who, what, where, when, and how' of the alleged fraud." *Alliance Commc'ns Coop., Inc. v. Global Crossing Telecomms., Inc.*, Nos Civ. 06-4221-KES, 06-3023-KES, 2007 WL 1964271, at *19 (D.S.D. July 2, 2007) (quoting *United States ex rel. Costner v. URS Consultants, Inc.,* 317 F.3d 883, 888 (8th Cir. 2003)).

While Sterling Computers identifies the who (IBM), the what (IBM's intent regarding its use of certain marks), the where (declarations on intent to use), and the when (2020), *see generally* Docket 95-1, Sterling Computers does not state with particularity how IBM's alleged false declaration regarding its intent to use IBM STERLING and STERLING was done to deceive *the public* such that a cause of action can be sustained under SDCL § 20-10-3. Rather, the amended complaint contains only the bare assertion that IBM submitted its untrue declarations "to deceive the public." Docket 95-1 ¶ 88. The remaining allegations in support of this claim focus on how Sterling Computers perceived and responded to IBM's declaration. *Id.* ¶ 89 ("caused Sterling significant concern"); *Id.* ¶ 90 ("Sterling was, and remains, fearful"). Because Sterling Computers' conclusory allegation lacks sufficient particularity as required by Rule 9(b), the Court finds that Sterling Computers' amended complaint fails to plausibly state a claim for deceit under SDCL § 20-10-3. Therefore, the motion to amend is denied as to this deceit claim.

### B. Cancellation of '027 Registration—No Bona Fide Intent to Use & Fraud on the USPTO

The Court combines Counts VIII and IX because the relevant allegations for each proposed cause of action are the same. *See* Docket 95-1 ¶¶ 95–108. In

15

both counts, Sterling Computers asserts that IBM did not have a bona fide intent to use the IBM STERLING mark "for some or all of the identified goods, including but not limited to computer hardware as set forth in International Class 9" at the time that IBM filed its '424 Application for IBM STERLING. Docket 95-1 ¶¶ 97, 103, 104. IBM's '424 Application matured into its '027 Registration. *Id.* ¶ 98. Sterling Computers asserts in Count VIII that because IBM lacked the bona fide intent to use IBM STERLING, the '027 Registration is subject to cancellation by this Court pursuant to 15 U.S.C. § 1119. *Id.* ¶ 99. Sterling Computers further alleges in Count IX that the '027 Registration is subject to cancellation pursuant to § 1119 because "IBM submitted the false declaration with a willful intent to deceive the USPTO" and the "USPTO relied on IBM's false and fraudulent declaration in issuing the resulting '027 Registration." *Id.* ¶¶ 105–107.

In response, IBM argues that Counts VIII and IX fail as a matter of law because Sterling Computers "lacks a cognizable injury to create a case or controversy for standing in federal court under Article III." Docket 100 at 15. More specifically, IBM contends that the only injury alleged by Sterling Computers is being forced to initiate this lawsuit against IBM, which does not constitute a cognizable injury. *Id.* at 14–15. IBM also argues that Sterling Computers' allegations supporting Counts VIII and IX do not meet the heightened pleading standards of Rule 9(b) because Sterling Computers asserts only conclusory allegations regarding IBM's state of mind, *Id.* at 19–20, and "merely restates the legal standards required for the claims[,]" *Id.* at 22.

16

Sterling Computers argues that it has standing to assert Counts VIII and IX because IBM sued it for trademark infringement. Docket 109 at 4, 6–7. It further contends that its claim for cancellation of the '027 Registration as alleged in Count VIII is not subject to the heightened pleading standards under Rule 9(b), and further that its allegations supporting Count IX satisfy Rule 9(b) because the amended complaint contains "express allegations of [IBM's] intent at the time of filing, including allegations regarding IBM's state of mind." *Id.* at 4.

Under § 37 of the Lanham Act,

> In any action involving a registered mark the court may determine the right to registration, order the cancelation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action. Decrees and orders shall be certified by the court to the Director, who shall make appropriate entry upon the records of the Patent and Trademark Office, and shall be controlled thereby.

15 U.S.C. § 1119. "A party seeking cancellation 'must prove two elements: (1) that it has standing; and (2) that there are valid grounds for canceling the registration.'" *Weems Indus., Inc. v. Teknor Apex Co.*, 757 F. Supp. 3d 854, 930 (N.D. Iowa 2024) (quoting *Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 945 (Fed. Cir. 2000)).

### i. Standing

"Standing 'requires only that the party seeking cancellation believe that it is likely to be damaged by the registration.'" *Id.* (quoting *Cunningham*, 222 F.3d at 945). The Court concludes that Sterling Computers has standing to request cancellation of IBM's '027 Registration. IBM sued Sterling Computers for

trademark infringement, and multiple courts have held that such confers standing. *See id.* ("A party sued for trademark infringement 'has the requisite injury to confer standing.'" (quoting *Aerogroup Int'l, Inc. v. Marlboro Footworks, Ltd.*, 977 F. Supp. 264, 267 (S.D.N.Y. 1997)); *see also WM Int'l, Inc. v. Golden Lyon Inv. Co.*, Case No.: CV 20-00995-CJC (JPRx), 2020 WL 6826485, at *2 (C.D. Cal. Nov. 5, 2020) (noting that "numerous courts have concluded that being sued for trademark infringement is sufficient injury to confer standing to seek cancellation of a mark" (citing cases)).

### ii. Grounds for Cancelling the Registration

"Under an international treaty known as the Madrid Protocol, businesses may obtain trademark protection in several jurisdictions with a single registration." *Oatly AB v. D's Nats. LLC* (*Oatley II*), Case No. 1:17-cv-840, 2022 WL 1651620, at *2 (S.D. Ohio May 24, 2022) (citation omitted). Congress enacted the Madrid Protocol Implementation Act in 2002, providing substantially the same rights as the international treaty. *Id.* (citing 15 U.S.C. §§ 1141–1441n). Under § 1141, "[a] request for extension of protection of an international registration to the United States . . . shall be deemed to be properly filed in the United States if such request . . . has attached to it a *declaration of bona fide intention to use the mark in commerce*[.]" 15 U.S.C. § 1141f(a) (emphasis added); *see also* 15 U.S.C. § 1051(b)(1).

However, the lack of such intent is a basis on which an opposer may challenge the applicant's right to the registration. *M.Z. Berger & Co., Inc. v. Swatch AG*, 787 F.3d 1368, 1375 (Fed. Cir. 2015); *see also Aktieselskabet AF*

18

21.*Nov. 2001 v. Fame Jeans Inc.*, 525 F.3d 8, 21 (D.C. Cir. 2008) (same); *BBK Tobacco & Foods LLP v. Cent. Coast Agric., Inc.*, 97 F.4th 668, 671 (9th Cir. 2024) (same). "If a court finds that a trademark applicant lacked a bona fide intent to use the mark in commerce at the time of registration, the registration is void ab initio and confers no priority on the registered mark holder." *Sunsauce Foods Indus. Corp., Ltd. v. Son Fish Sauce USA Corp.*, Case No. 5:22-cv-08973-PCP, 2024 WL 4933346, at *9 (N.D. Cal. Dec. 2, 2024) (citing *Bobosky v. Adidas AG*, 843 F. Supp. 2d 1134, 1140 (D. Or. 2011) (additional citation omitted)).

A party may also seek cancellation of a registered trademark based on fraud. *MPC Franchise, LLC v. Tarntino*, 826 F.3d 653, 658 (2d Cir. 2016); *see also* 15 U.S.C. § 1064(3) (providing that "any person who believes that he is or will be damaged" may file a "petition to cancel a registration of a mark," for which "registration was obtained fraudulently"). "Fraud in procuring a trademark registration or renewal occurs when an applicant knowingly makes false, material representations of fact in connection with his application." *In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009) (quoting *Torres v. Cantine Torresella S.r.l.*, 808 F.2d 46, 48 (Fed Cir. 1986)); *see also 3M Co. v. Intertape Polymer Grp., Inc.*, 423 F. Supp. 2d 958, 961–62 (D. Minn. 2006). The heightened pleading standard under Rule 9(b) applies to a fraud-based claim for cancellation. *Oatly AB v. D's Nats. LLC* (*Oatley I*), Case No. 1:17-cv-840, 2018 WL 3496386, at *3 (S.D. Ohio July 20, 2018), *report and recommendation adopted*, No. 1:17CV840, 2018 WL 4625553 (S.D. Ohio Sept. 27, 2018).

The Court concludes that Sterling Computers has sufficiently alleged lack of bona fide intent as a ground for cancelling IBM's '027 Registration. In this regard, Sterling Computers asserts in its amended complaint that IBM obtained international registrations with WIPO on February 24, 2020. Docket 95-1 ¶ 36. The amended complaint also lists the goods and services IBM designated in its WIPO registrations, *Id.* ¶¶ 37–38, and alleges that IBM filed a declaration that it had a bona fide intent to use the mark in commerce on or in connection with the goods and services so identified, *Id.* ¶¶ 41–43. Sterling Computers then asserts that two witnesses on behalf of IBM provided testimony establishing that IBM did not—at the time of filing its '042 Application—have a bona fide intent to use IBM STERLING for some or all of the identified goods. Docket 95-1 ¶ 97; *Id.* ¶ 50 (lack of bona fide intent to use marks related to hardware); *Id.* ¶ 51 (lack of bona fide intent to use marks related to business consulting services); *Id.* ¶ 52 (lack of bona fide intent to use marks for certain services). The allegations in Sterling Computers' amended complaint thus support a plausible claim that IBM did not—at the time it filed the '042 Application—have a bona fide intent to use IBM STERLING for some or all of the identified goods.

The Court also concludes that Sterling Computers sufficiently alleged fraud as a ground for cancelling IBM's '027 Registration. Sterling Computers asserts that IBM acted with the intent to deceive the USPTO when it submitted its false declaration. *Id.* ¶ 105. To support this claim, Sterling Computers notes that it has been a business partner with IBM since 2001, which made IBM

20

aware of Sterling Computers' services offered under its marks. *Id.* Sterling Computers then claims that despite having no intent to use IBM STERLING and STERLING for some or all of the identified goods, "IBM carefully crafted the description of goods and services in the WIPO Registrations" to deceive the USPTO into issuing the '027 Registration that falsely includes products and services that overlap with Sterling Computers' use of its marks. *Id.* ¶¶ 87, 89, 105, 106. Sterling Computers asserts that "IBM's scienter is further evidenced by the fact that IBM sought to divide the '424 Application so as to expedite registration of the portion of the application claiming International Classes 9 and 35." *Id.* ¶ 105. Finally, Sterling Computers claims that the USPTO relied on IBM's false declaration when issuing the '027 Registration and further that IBM's application would not have been accepted had IBM not made such false declaration. *Id.* ¶ 106.

While IBM disagrees that Sterling Computers' allegations are sufficient to support an inference that IBM acted with an intent to defraud the USPTO, its arguments attack the weight of Sterling Computers' allegations. Docket 100 at 19–28. For example, IBM claims that Sterling Computers' "pleadings are based on a mischaracterization of the testimony of two witnesses." *Id.* at 20. In IBM's view, the deposition testimony of Mr. Dickinson and Ms. Ramos concerns "IBM's past STERLING offerings and marketing efforts[,]" not its "intent for its STERLING brand in February 2020." *Id.* at 25 (emphasis omitted). IBM also contends that Sterling Computers' allegations about IBM's state of mind "fail to show sufficient indicia of reliability." *Id.* at 20. Relatedly, IBM asserts that Mr.

21

Dickinson's and Ms. Ramos's deposition testimony "is not relevant" to show how IBM intended to use its marks in February 2020, because they "frequently responded that they did not recall, did not know, or did not have personal experience with the questioned goods and services." *Id.* at 26–27.

But the test for futility requires the Court to accept as true Sterling Computers' factual allegations in the amended complaint. *Hillesheim v. Myron's Cards & Gifts, Inc.*, 897 F.3d 953, 955 (8th Cir. 2018) (citation omitted). The Court does not weigh the substance of the proposed amended pleadings; nor is the likelihood of success on a proposed claim a consideration. *Becker v. Univ. of Neb. at Omaha*, 191 F.3d 904, 908 (8th Cir. 1999). To conclude otherwise and consider IBM's arguments challenging the veracity of the evidence supporting Sterling Computers' claims would convert the futility analysis into a determination whether Sterling Computers alleged sufficient material facts in dispute to avoid summary judgment.

The Court finds that Sterling Computers' amended complaint alleges sufficient facts to plausibly state a claim in Count VIII for cancellation under § 1119 for lack of bona fide intent and in Count IX for fraud. Therefore, the motion to amend as to these two claims is granted.

### C. Civil Liability for False or Fraudulent Registration

Relying on its allegations regarding IBM's lack of bona fide intent to use IBM STERLING and STERLING in the United States for all the identified goods in its WIPO Registrations and its willful intent to deceive the USPTO by submitting a false declaration, Docket 95-1 ¶¶ 110–15, Sterling Computers

22

further alleges in Count X that "[a]s a result of IBM's false or fraudulent procurement of the '027 Registration, Sterling has suffered and continues to suffer damages in an amount to be determined[,]" *Id.* ¶ 116. Sterling Computers claims that IBM's "expanded scope of use of IBM STERLING and STERLING . . . overlaps with Sterling's existing business and Sterling's use of its marks in connection with such products and services[.]" *Id.* It then alleges that the expanded scope by IBM "is interfering with Sterling's ability to conduct business." *Id.* It also alleges that it "was, and remains, fearful that IBM's portfolio will cover additional parts of the business that Sterling is already providing under the STERLING marks." *Id.* ¶ 45. And, similar to its infringement claims in the original complaint, *see generally* Docket 1, Sterling Computers alleges that "IBM's use and/or claimed use of IBM STERLING and STERLING in connection with information technology products and services that overlap with Sterling's existing business and Sterling's use of its marks in connection with such products and services is likely to cause confusion, mistake, or deception[,]" Docket 95-1 ¶ 47. Finally, Sterling Computers alleges it "was forced to file this action and is now defending against infringement claims because of IBM's falsely procured '027 Registration." Docket 95-1 ¶ 116.

Though not cited by Sterling Computers in its proposed amended complaint, it is clear Count X asserts a cause of action pursuant § 38 of the Lanham Act, 15 U.S.C. § 1120, which creates civil liability for false or fraudulent trademark registration. *See* Docket 109 at 7 (Sterling Computers' reply memorandum noting the applicable statute). According to IBM, Sterling

23

Computers failed to plead this cause of action with sufficient specificity as required by Rule 9(b). Docket 100 at 18-22. On the contrary, the Court previously determined that Sterling Computers' amended complaint contains sufficient allegations to state a plausible claim that IBM submitted false declarations with the intent to deceive the USPTO. Therefore, it is unnecessary to address the sufficiency of these same allegations as they relate to Count X.

IBM also asserts that Sterling Computers' civil liability claim in Count X fails as a matter of law because Sterling Computers lacks standing to bring this claim against IBM. *Id.* at 15. In particular, IBM contends that Count X "contains a vague allegation" regarding how Sterling Computers has been damaged and further that the allegations in the amended complaint are insufficient to support an inference that "IBM's registrations directly caused it harm (besides the losses incurred from [Sterling Computers'] choice to litigate)." *Id.* at 16. IBM notes that the parties filed a joint motion representing that neither party would pursue actual damages in this case, which, to IBM, "makes [Sterling Computers'] vague allegations of harm suffered from IBM's registrations even more abstract and implausible." *Id.* at 17.

Under § 38 of the Lanham Act, "[a]ny person who shall procure registration in the Patent and Trademark Office of a mark by a false or fraudulent declaration or representation, oral or in writing, or by any false means, shall be liable in a civil action by any person injured thereby for any damages sustained in consequence thereof." 15 U.S.C. § 1120. The Eighth Circuit defined "in the consequence thereof" as an injury "resulting from the

24

use of the 'mark' while falsely registered, and not an injury resulting from the false declaration solely." *Landstrom v. Thorpe*, 189 F.2d 46, 50 (8th Cir. 1951). Further, while "it is plausible to suppose that there is some generalized injury that results from the PTO's Register of Trademarks containing marks that it shouldn't contain[,]" an injury must be particular to the plaintiff for there to be standing to bring a claim under § 1120. *E. Iowa Plastics, Inc. v. PI, Inc.*, 832 F.3d 899, 904 (8th Cir. 2016).

Consistent with the above, "[t]o establish Article III standing, a party invoking federal jurisdiction must show (1) that the plaintiff suffered an injury in fact, (2) a causal relationship between the injury and the challenged conduct, and (3) that a favorable decision will likely redress the injury." *The Sch. of the Ozarks, Inc. v. Biden*, 41 F.4th 992, 997 (8th Cir. 2022) (citation omitted). "On a motion to dismiss, therefore, the plaintiff[ ] must allege sufficient facts to support a reasonable inference that [it] can satisfy the elements of standing." *Animal Legal Def. Fund v. Vaught*, 8 F.4th 714, 718 (8th Cir. 2021).

IBM is correct that Sterling Computers' allegation that it was forced to institute the current lawsuit against IBM and defend against IBM's counterclaims because of IBM's falsely procured registration, Docket 95-1 ¶ 116, does not create standing. *See Kennedy v. Ferguson*, 679 F.3d 998, 1002–03 (8th Cir. 2012) (concluding "litigation-related costs . . . are not injuries for purposes of assessing the presence of Article III standing"); *Diamond v. Charles,* 476 U.S. 54, 70–71 (1986) (providing that "an injury that is only the byproduct

of the suit itself does not mean that the injury is cognizable under Art. III"). The Court also rejects Sterling Computers' argument that its amended complaint "alleged sufficient facts to support an inference that IBM's fraudulent registrations are impeding Sterling's ability to register Sterling's own marks." Docket 109 at 10 n.3. The amended complaint does not contain any allegation that the USPTO refused to register Sterling Computers' STERLING mark. *See generally* Docket 95-1.

However, the Court concludes that Sterling Computers has established standing to assert its claim as alleged in Count X. First, contrary to IBM's view, the parties' stipulation, Docket 93, not to pursue actual damages in this case does not mean Sterling Computers has failed to allege a sufficient injury to show standing to assert a claim under § 1120. Of note, the parties also included language in the stipulation that it "does not affect either party's ability to pursue, request, or obtain other types of monetary and nonmonetary remedies for either party's federal and state law claims, including attorneys' fees." Docket 93 ¶ 2.

Second, Sterling Computers alleged a cognizable injury. The Court takes Sterling Computers' allegations as true and considers all reasonable inferences in Sterling Computers' favor, as is required on a motion to dismiss. *See Hillesheim*, 897 F.3d at 955. The proposed amended complaint alleges that IBM's falsely procured '027 Registration, which overlaps with Sterling Computers' existing business and use of its marks, is interfering with Sterling Computers' ability to do business. Docket 95-1 ¶¶ 89, 116. This injury is not

26

only concrete and particularized, it results from the use of the mark rather than the false declaration itself. On this basis, the Court concludes that Sterling Computers has standing to bring a claim under § 1120.

## CONCLUSION

Sterling Computers' proposed amended complaint is made with good cause, and IBM has not met its burden of establishing unfair prejudice. While IBM has shown that Sterling Computers' proposed claim for deceit under SDCL § 20-10-3 as alleged in Count VII is futile, IBM has not shown the same for Sterling Computers' proposed claims as alleged in Counts VIII, IX, and X.

Accordingly, it is hereby

ORDERED that Sterling Computers' motion for leave to amend its complaint, Docket 94, is granted in part and denied in part.

Dated May 27, 2025.

BY THE COURT:

/s/ *Camela C. Theeler*
CAMELA C. THEELER
UNITED STATES DISTRICT JUDGE